THE FIRST TRUST COMPANY OF HILO, LIMITED, Trustee of the Thomas Albert Reinhardt Trust, Plaintiff-Appellee, *v.* RAYMOND H. M. REINHARDT, et al., Defendants

NO. 8252

(CIVIL NO. 2206)

DECEMBER 29, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Purchaser-Appellant Kimo Kinard (Kinard) appeals the denial of his Rule 60(b)(1) and (6) motion to set aside the order confirming the judicial sale of parcel two to him. Finding no abuse of discretion, we affirm.

On April 10, 1970, plaintiff-appellee First Trust Company of Hilo, Limited (Trustee) filed an action to quiet title to nine parcels of land on the island of Hawaii and then to partition them by sale. On February 17, 1972, the lower court filed an interlocutory decree determining title to the nine parcels.

On May 11, 1972, Edward Y. Kanemoto, an appraiser appointed by the lower court, used a comparative or market data approach and valued parcel two at $273,300.00. He described it as being Tax Map Key 2-1-06-16, area 2.202 acres. Under the heading "Zoning," he stated: "Under the Hawaii County Zoning Ordinance, it is partially zoned Hotel Resort with minimum of .75 and the remainder as

Open. Whereas, as Hotel Resort by the State Land Use Commission."

At a public auction on October 27, 1972, no bids were received for parcel two at the upset appraisal price. All other parcels were sold.

On November 15, 1975, Al Inoue (Inoue), another appraiser appointed by the lower court, also using a comparative or market data approach, valued parcel two at $226,000.00. Inoue pointed out that parcel two contains a pond of approximately 32,700 square feet which has an entrance to the ocean (Reed's Bay) through an abandoned railroad right-of-way; that the property is zoned part Hotel/Resort and part Open; that it permits 58 living or hotel units; and that all units must be constructed ten feet above sea level.[1]

On July 22, 1979, George J. Reeves and Inoue offered to purchase parcel two for $174,500.00 subject to the following special condition: "Buyers will obtain plan approval from the County of Hawaii and the State of Hawaii at their own expense to be able to construct minimum of 58 units before court approval of sale."

On March 3, 1980, the lower court responded to the offer and ordered, *inter alia:*

1. That the offerors shall have thirty (30) days from the issuance of this order to procure at their own expense and risk a shoreline survey.

2. That the offerors shall within such thirty (30) days notify the Co-Commissioners in writing whether or not they wish to proceed with the offer, that is to say, proceed on to a public auction wherein the offerors would bid not less than the amount stated in the DROA offer.

3. In the event the offerors wish to proceed, the Co-Commissioners shall advertise the sale of the property by public auction without upset price in the *Hawaii Tribune-Herald* once a week for three (3) consecutive weeks.

4. In the event the offerors withdraw their offer within said thirty (30) days or fail to notify the Co-Commissioners [the Co-Commissioners] shall not proceed with any advertisement for sale by public auction until further order of Court.

---

[1] Mr. Kinard testified that in April 1980 the requirement was 16 feet and that it might be raised to 24 feet in 1981.

The public auction was held on May 2, 1980. The co-commissioners reported, *inter alia,* as follows:

> The persons in attendence [sic] were also advised that one of the major problems confronting the use of this property was the determination of the shoreline boundary since the tsunami had washed away the old railroad right of way; that any person buying this property would do so at his own risk as to what possible uses could be made of the property; that other factors involved in the use of the property included: set back rules, tsunami zone, SMA approval, zoning, and general plan provisions.

There were only two bidders, Inoue and Kinard. Kinard's $305,000.00 was the highest bid.

The sale was confirmed by order dated June 3, 1980. Kinard was required to pay $30,500.00 immediately and the balance within 90 days. The balance has not yet been paid.

On December 12, 1980, Kinard filed a Rule 60(b)(1) and (6), HRCP, motion to cancel the sale.[2] He alleged that prior to bidding he telephoned the Planning Department of the County of Hawaii (PDCH) and had been informed that the property was zoned Hotel-Resort, that it could support a modest condominium project but that the exact number of units allowable could not be stated with certainty until a shoreline survey was completed. He further alleged that it was not until August 1, 1980 that the PDCH advised him that in July 1979[3] the County General Plan was amended to limit parcel two to light-industrial uses and, therefore, that a condominium project was not permissible.

After a hearing, the lower court denied Kinard's motion based on its findings and conclusions[4] that:

> 1. Kinard's mistake "cannot be characterized as an innocent

---

[2] In essence, the buyer is asking the seller to release him from his obligations under the sales contract.

[3] Ordinance No. 456 was enacted on July 17, 1979.

[4] The appellate standard of review of the lower court's findings of fact is the clearly erroneous standard. Rule 52(a), HRCP. The appellate standard of review of the lower court's denial of a motion under Rule 60(b)(1) and (6), HRCP, is the abuse of discretion standard. 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: § 2872 (1973).

mistake of fact."

2. Kinard failed to prove that he will suffer substantial hardship and prejudice if the sale is not cancelled.

3. The Commissioner proved that a cancellation would be extremely prejudicial to the trust estate.

The Trustee contends that the lower court's denial of Kinard's Rule 60(b) motion to cancel the sale is interlocutory and not appealable absent special permission under HRS § 641-1(b) (1976). We disagree. An order denying a motion under Rule 60(b) is final and appealable. 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: § 2871 (1973); & MOORE'S FEDERAL PRACTICE, ¶ 60.30[1] (1982).

Kinard, who at the time of trial was a licensed realtor with ten years of experience in the real estate business, contends that his "contract" to purchase is voidable under Restatement, Second, *Contracts* § 153 (1981).

In judicial sales, the court is the vendor. 47 Am. Jur.2d *Judicial Sales* § 2 (1969). The confirmation of sale is the equivalent of a valid contract of sale. *Id.* § 201. Consequently, application of contract law is appropriate when determining whether or not to set aside a judicial sale on the basis of the buyer's unilateral mistake.[5]

Restatement, *supra*, §§ 153, 154, and 157[6] provides:

§ 153. *When Mistake of One Party Makes a Contract Voidable*

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and

    (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or

---

[5] There is precedent for the application of such criteria even though the appellate standard of review is abuse of discretion. A motion to set aside a default judgment is also addressed to the trial court's discretion. However, that discretion is subject to the criteria set forth in *BDM, Inc. v. Sageco, Inc.,* 57 Haw. 73, 549 P.2d 1147 (1976).

[6] Section 157 is akin to HRCP 60(b)(1)'s "excusable neglect." The lower court concluded that Kinard's neglect was inexcusable. We do not reach that issue.

(b) the other party had reason to know of the mistake or his fault caused the mistake.

§ 154. *When a Party Bears the Risk of a Mistake.*

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

§ 157. *Effect of Fault of Party Seeking Relief.*

A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair-dealing.

Applying the Restatement's rules, we find no error in the lower court's decision that Kinard has not sustained his burden of proof. First, Kinard has not proved that enforcement of the sale would be unconscionable. The only evidence in the record of parcel two's value at the time of Kinard's motion is: (1) the court's co-commissioner, who is an attorney, testified: "Somebody might want that place for light industrial use if he could get a good price for it. And I'm afraid that might be far short of what we already have, that is, three hundred and five thousand dollars"; and (2) on October 11, 1980, Kinard gave an exclusive right-to-sell listing to realtor Arthur Doo, dba Pacific World Real Estate. The listing price was $500,000.00. The listing described the property as the:

Last remaining fee simple parcel in area

Ideal site for exclusive ocean front restaurant

Across from "Hotel Row" and Banyan Golf Course

That evidence does not prove that it would be unconscionable to enforce the contract.

Second, the facts show that under § 154(a) and (c) and possibly even under (b), Kinard bears the risk of the mistake. Therefore, he

may not take advantage of it.

Third, Restatement, § 157, does not supersede §§ 153 and 154. It applies only where the contract is voidable under §§ 153 and 154. Here, that is not the case.

Affirmed.[7]

*Thomas J. Carney, Jr.,* for appellant.

*Terence T. Yoshioka (William S. Chillingworth* on the brief; *Nakamoto, Yoshioka & Chillingworth)* for appellee.