31 P.3d 205

FIRST HAWAIIAN BANK,
Plaintiff-Appellee,

v.

Robert Melven TIMOTHY,
et al., Defendants,

and

Ralph K. Hayashi, Purchaser-Appellant,

and

Association of Apartment Owners of
Crosspointe, by and through its
Board of Directors, Plaintiff,

v.

First Hawaiian Bank, Defendant-
Appellee,

and

Robert Melven Timothy,
et al., Defendants,

and

Ralph K. Hayashi, Purchaser-Appellant.

No. 22795.

Intermediate Court of Appeals of Hawai'i.

Aug. 9, 2001.

As Amended Aug. 30 and Sept. 17, 2001.

Jason N. Baba, Bruce D. Voss (Bays, Deaver, Hiatt, Lung & Rose) on the briefs, Honolulu, for purchaser-appellant.

Wayne K.T. Mau, Peter A. Horovitz (Watanabe, Ing & Kawashima) on the briefs, Honolulu, for plaintiff-appellee/defendant-appellee.

WATANABE, Acting C.J., LIM, and FOLEY, JJ.

Opinion of the Court by WATANABE, Acting C.J.

This appeal stems from a mortgage foreclosure case in which Purchaser-Appellant Ralph K. Hayashi (Hayashi), the confirmed highest bidder at a judicial foreclosure sale, failed to pay the balance of the price that he had bid for the property. As a result, the Circuit Court of the First Circuit (the circuit court), Judge Kevin S.C. Chang (Judge Chang) presiding, cancelled the sale to Hayashi, forfeited the $7,200.00 that Hayashi had deposited as a downpayment for the property, and ordered Hayashi to pay damages exceeding $20,427.20 to First Hawaiian Bank (FHB), the first mortgagee of the property and the Plaintiff-Appellee in Civil No. 97-1062 and the Defendant-Appellee in Civil No. 97-2270.

On appeal, Hayashi challenges the propriety of the damages he was ordered to pay. In summary, he maintains that the circuit court: (1) lacked subject matter jurisdiction to award damages against him; (2) erred in awarding FHB damages in excess of his $7,200.00 deposit; and (3) erred in awarding attorneys' fees to FHB, since no evidence was submitted by FHB's counsel, itemizing their request for fees.

We disagree with Hayashi's first contention. We disagree with Hayashi's second contention, to the extent that he claims that his maximum liability is the $7,200.00 he deposited as a downpayment on his purchase. We agree with Hayashi, however, that the amount of damages awarded to FHB was excessive. As to Hayashi's third contention, we agree that the circuit court should have required FHB's counsel to support their request for attorneys' fees. Accordingly, we vacate in part and affirm in part: (1) the "Order Granting [FHB's] Motion for Cancellation of Sale, Forfeiture of Deposit, to Reopen Auction Sale to Allow Rebidding, and for Order Confirming Foreclosure Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Private Sale of Personal Property" (Order Cancelling Sale), filed on August 6, 1999; and (2) the "Judgment Based Upon the Order Cancelling Sale[,]" also filed on August 6, 1999. We remand this case to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

On March 18, 1997, FHB filed a lawsuit (Civil No. 97-1062) against Robert Melven Timothy (Timothy), Association of Apartment Owners of Crosspointe, Increment B, Phase B-2 (AAOC), and others, seeking to foreclose upon Timothy's leasehold interest in Apartment No. 12-E of the Crosspointe Condominium (the subject property), which Timothy had mortgaged as security for an adjustable rate promissory note he had issued to FHB for the amount of $132,000.00. On June 3, 1997, AAOC filed a separate complaint (Civil No. 97-2270) in the circuit court against Timothy,[1] FHB, and others to foreclose upon Timothy's leasehold interest in the subject property. The basis of AAOC's complaint was that Timothy had failed to pay his share of the common expenses attributed to his condominium unit, amounting, as of June 1, 1997, to $4,010.24.

1. The complaint of Defendant Association of Apartment Owners of Crosspointe (AAOC) in Civil No. 97-2270 named as Defendant Robert "Melvin" Timothy (Timothy). In later proceedings, Timothy's middle name was changed to "Melven" in the case caption, consistent with the spelling of Timothy's name in Civil No. 97-1062.

On November 5, 1997, AAOC filed a Motion for Consolidation of Civil Nos. 97-1062-03 and 97-2270-06, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rules 7 and 42(a). HRCP Rule 7 generally governs the form of motions. HRCP Rule 42(a), provides:

> **Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

On December 16, 1997, the circuit court entered an order granting AAOC's motion for consolidation.[2] AAOC is not a party to this appeal.

On December 12, 1997, the circuit court, Judge Virginia L. Crandall presiding, filed "Findings of Fact, Conclusions of Law, and Order Granting [FHB's] Motion for Summary Judgment and for Interlocutory Decree of Foreclosure" (the Decree). The Decree foreclosed upon Timothy's interest in the subject property, appointed Edith Ishibashi (Ishibashi) as Commissioner, and authorized and directed Ishibashi

> to take possession of the subject property, to rent the subject property pending foreclosure, if appropriate, and to sell the subject property by foreclosure sale in its "AS IS" condition, without any representations or warranties whatsoever as to title or possession, and by way of quitclaim conveyance.

Ishibashi publicly auctioned the subject property at noon on February 4, 1998. In her Commissioner's Report filed with the circuit court on February 12, 1998, Ishibashi related that prior to the auction, she had prepared a "Fact Sheet," which she "mailed, faxed, and distributed to over six (6) different persons and parties" whom she "felt might be in a position to refer the information to other interested parties or to their clients." She also showed the subject property at two (2) open houses and published an advertisement concerning the subject property three (3) times in two (2) newspapers having general circulation in the State of Hawai'i. Ishibashi also stated that at the auction, she received six (6) bids for the subject property from two (2) bidders, FHB, and Hayashi. The bids ranged from $65,000.00 to $71,501.00, with

---

2. Hawai'i Rules of Civil Procedure Rule 42(a) is identical to Federal Rules of Civil Procedure Rule 42(a). Professors Wright and Miller have explained that

> [i]n the context of legal procedure, "consolidation" is used in three different senses:
> (1) When all except one of several actions are stayed until one is tried, in which case the judgment in the one trial is conclusive as to the others. This is not actually consolidation but is sometimes referred to as such.
> (2) *When several actions are combined into one, lose their separate identity, and become a single action in which a single judgment is rendered.* An illustration of this is the situation in which several actions are pending between the same parties stating claims that might have been set out originally as separate counts in one complaint.
> (3) *When several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment.* This type of consolidation does not merge the suits into a single action, or cause the parties to one action to be parties to another.
> Rule 42(a) refers separately to the court's power to order a joint trial and to the power to

order the actions consolidated. Therefore, it seems to authorize both the second and third of the procedures just described. The case law, however, is quite clearly to the contrary. The courts have read the rule as providing only for the third of these procedures. They regard as still authoritative what the Supreme Court said about consolidation before Rule 42(a) was adopted:

> consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties to one suit parties in another.

Thus in a substantial number of cases federal courts have held that actions do not lose their separate identity because of consolidation under Rule 42(a).

9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2382, at 428-30 (1995). In its December 16, 1997 "Order Granting [AAOC's] Motion for Consolidation of Civil Nos. 97-1062-03 and 97-2270-06," the Circuit Court of the First Circuit (the circuit court) did not indicate whether the actions merged into a single cause. Accordingly, it appears that the circuit court intended that the actions be tried jointly but retain their separate character.

Hayashi submitting the highest bid, and FHB submitting the next highest bid at $71,500.00. Ishibashi concluded that under the circumstances, "the bid of $71,501 is a fair and equitable market price for [the subject property]."

The "Fact Sheet" Ishibashi distributed to potential purchasers of the subject property included general information about the subject property, as well as details about Timothy's debt service for the subject property.[3] Additionally, the "Fact Sheet" outlined the following "Terms of Sale," which were also included in the "Notice of Foreclosure Sale" published in the two (2) newspapers of general circulation:

TERMS OF SALE: NO UPSET PRICE. Property sold in "as-is" condition at public auction with 10% of highest bid payable in cash, certified or cashiers check at the close of auction, balance payable upon delivery of title. Potential bidders must be able to provide proof of the ability to comply with the 10% bid requirement prior to participating in the public auction. Buyer shall pay all costs of closing including escrow, conveyance & recordation fees, and conveyance taxes and is responsible for securing possession of the property upon recordation. SALE SUBJECT TO COURT CONFIRMATION.

In accordance with the Terms of Sale, Hayashi opened an escrow account with Security Title Corporation (Security Title) and gave Ishibashi, as his ten (10) percent of bid price downpayment, a cashier's check for $7,200.00, which Ishibashi subsequently deposited with Security Title.

On March 3, 1998, FHB filed a "Motion for Order Approving Commissioner's Report, Confirming Foreclosure Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Private Sale of Personal Property" (Motion for Confirmation). Judge Eden E. Hifo [4] presided over the April 16, 1998 hearing on the motion and on May 15, 1998, filed an "Order Approving Commissioner's Report, Confirming Foreclosure Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Private Sale of Personal Property" (Order Confirming Sale). The Order Confirming Sale "ordered, adjudged, and decreed[,]" in pertinent part, as follows:

2. In accordance with the Decree, the sale of the subject property to [Hayashi] at a price of $71,501.00 is ratified, approved and confirmed. Upon receipt of the full purchase price, [Ishibashi] shall make a good and sufficient conveyance of the subject property to [Hayashi] or to [Hayashi's] written order. The sale shall be subject to all unpaid real property taxes and assessments.

3. The following are allowed for services and expenses:

a. [Ishibashi] is allowed the sum of $4,493.36.

b. [FHB's attorneys] are allowed the sum of $6,674.66 for costs and expenses incurred through May 12, 1998. This [c]ourt reserves jurisdiction on additional attorneys' fees and costs incurred by [FHB's attorneys] to complete this matter and will award such additional attorneys' fees and cost, which award will be reflected in any deficiency judgment granted to FHB herein upon affidavit of FHB or FHB's counsel specifying such additional attorneys' fees and costs.

4. Out of the sum of $71,501.00 received for the subject property sold and the amount now in the hands of [Ishibashi],

---

3. According to the Fact Sheet, the assessed valuation of the subject property totaled $144,500.00 ($79,300.00 for the building, plus $65,200.00 for the land). As of September 23, 1997, Timothy owed First Hawaiian Bank (FHB), which was the first mortgagee, the Plaintiff-Appellee in Civil No. 97-1062, and the Defendant-Appellee in Civil No. 97-2270, the following amounts:

| Principal Balance: | $128,651.35 |
|---|---|
| Interest to 09/1/97 | 9,648.84 |
| Interest to 9/23/97 | 628.96 |
| Late Charges: | 229.30 |
| Escrow Advances: | 888.98 |
| Title Report | 200.00 |
| Total | $140,247.43 |

The Fact Sheet also noted that "[f]unds received after 09-23-97 will require an additional $28.59 per diem to date payment is received."

4. At the time of the confirmation hearing, Judge Eden E. Hifo presided under the name Bambi E. Weil.

[Ishibashi] shall pay, but only to the extent funds are available to do so, the following amounts in the order and in the priority set forth below:

a. To herself, ... the sum of $4,493.36 as her fee for her services and expenses. .[sic]

b. [FHB's attorneys] are allowed the sum of $6,674.66 through May 12, 1998 plus such additional attorneys' fees and costs subsequently awarded as described herein for their services and expenses as attorneys for FHB.

. . . .

8. Upon delivery to [Hayashi] or his written order of the conveyance authorized and directed by this order, [Hayashi] or [Hayashi's] written order shall be entitled to immediate and exclusive possession of all of the subject property. The [c]ourt hereby reserves jurisdiction to assist [Hayashi] or his written order to gain such possession, including issuing a writ of possession, if necessary.

The Order Confirming Sale also granted a deficiency judgment in favor of FHB against Timothy, to be "entered upon affidavit of FHB or FHB's counsel designating such deficiency pursuant to [Ishibashi's] final distribution statement and/or closing statement." The Order Confirming Sale did not provide a deadline by which Hayashi was to pay the balance of his bid price and close his purchase.

On April 9, 1999, over a year after the Order Confirming Sale had been entered, FHB filed a "Motion for Cancellation of Sale, Forfeiture of Deposit, and to Re-open Auction Sale to Allow Re-bidding, and for Order Confirming Foreclosure Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Private Sale of Personal Property" (Motion for Cancellation). In the motion, FHB asserted that Hayashi failed to close the sale as directed by the circuit court pursuant to the Order Confirming Sale and requested:

2. The deposit of [Hayashi] be forfeited to cover damages suffered by FHB, the additional expenses incurred by [Ishibashi], additional accrued interest, fees, costs, and expenses incurred by FHB, including attorneys' fees and costs, and any other expenses the [c]ourt deems just, as a result of [Hayashi's] failure to close the sale of the [s]ubject [p]roperty within a reasonable period of time (the "damages");

3. Should the deposit of [Hayashi] be insufficient to cover the damages, that such insufficiency be paid out of additional funds held by [Security Title] in an escrow account opened by [Hayashi] for the purpose of completing the sale of the subject property herein, with the balance of said escrow account after payment of all damages being returned to [Hayashi.]

FHB also requested that the circuit court authorize Ishibashi to reopen the auction at the hearing on the Motion for Cancellation and that the "sale of the [s]ubject [p]roperty be confirmed to the high bidder at the re-opened auction[.]"

On May 25, 1999, Hayashi filed his "Memorandum in Partial Opposition to [FHB's Motion for Cancellation]." As an initial matter, Hayashi noted that "FHB's request that its alleged additional damages be paid from funds held by Security Title is moot, inasmuch as Security Title has returned all funds to Hayashi other than his initial deposit in the amount of $7,200."

Hayashi also explained that his delay in closing the sale was justified because, despite his repeated advisements to Ishibashi that he desired an expedited closing of the sale, FHB did not file its Motion for Confirmation until March 3, 1998, and the Order Confirming Sale was not entered by the circuit court until May 15, 1998. Hayashi claimed he was prejudiced by these delays because by the time the Order Confirming Sale was entered, the crew of Crosspointe Construction, a contracting firm which had been on-site at the Crosspointe Condominium to do some repair work for different condominium units and which Hayashi intended to use to repair the subject property, had demobilized, thus increasing the cost and time Hayashi would have to spend to make the subject property marketable.

Additionally, Hayashi asserted, FHB failed to reasonably mitigate its damages. "[F]or nearly a year[,]" Hayashi explained, he had "attempted to reach a compromise with

FHB. FHB refused all Hayashi's proposals, and refused to honor its $71,500 bid[,]" which would have prevented the accrual of additional fees and expenses. Hayashi also explained that, had FHB accepted his offer to assign his position, the need for rebidding would have been obviated. Accordingly, Hayashi argued, FHB was not entitled to his deposit, which should be returned to him.

Following a hearing on FHB's Motion for Cancellation, Judge Chang orally ruled as follows:

After considering the written submissions and reviewing the file in this case, it is clear, first, that the purchaser, [Hayashi], has not closed the sale in a timely and proper manner.

The court further finds that Hayashi has failed to establish that in this case [FHB] acted in bad faith or unreasonably delayed the submission of the order confirming the sale, or acted otherwise in bad faith in this case.

As noted, the confirmation hearing was on April 16, 1998 and the order confirming was entered on May 15, 1998.

Based on [Hayashi's] failure to close within the required time, [FHB's] motion is granted. [FHB] is allowed to reopen the bidding without additional advertisements.

And further, the court finds that [Hayashi] is liable for the additional expenses. The deposit is forfeited.

The court in this case relies on *Grant* [5] *vs. [v.] Devaris Development*, 7 HI [Hawai'i] App. 40, 1987, 741 P.2d 722 [(1987)] and *Makani Development Company vs. [v.] Saul*, 4 HI [Hawai'i] App. 542, 670 P.2d 1284, a 1983 case.

[FHB's] motion is granted in all respects.

(Footnote added.) FHB's counsel was asked to prepare the order.

A recess in the hearing was taken and bidding was reopened. The bidding resulted in a high bid of $69,000.00, made by FHB. The case was subsequently recalled, with Ishibashi and FHB's counsel present at the recalled hearing. At the beginning of the recalled hearing, the following colloquy transpired between FHB's counsel and the circuit court:

[FHB'S COUNSEL]: Just one question, Your Honor to clarify whether or not--the damages are over and above [Hayashi's] 10 percent deposit of $7200, so is he liable for the additional amounts or just the seventy-two?

THE COURT: That was part of your motion which you asked for—

[FHB'S COUNSEL]: Correct. I just wanted to clarify with the court. Thank you, Your Honor.

THE COURT: All right.

The circuit court then orally confirmed the sale of the subject property to FHB for the amount of $69,000.00, approved Ishibashi's request for fees and costs, and approved the request for attorneys' fees submitted by FHB's counsel. FHB's counsel was directed to prepare the written order.

On August 6, 1999, the circuit court filed its Order Cancelling Sale. As part of the Order Cancelling Sale, the circuit court entered several findings of fact, among them, the following:

6. [Hayashi] has failed to complete the sale of the [s]ubject [p]roperty as confirmed by this [c]ourt pursuant to that certain [Order Confirming Sale] filed on May 15, 1999 [sic].[6]

7. [Hayashi's] failure to complete the sale of the [s]ubject [p]roperty has caused damages in the following amounts (the "Damages"):

---

**5.** The name of the case cited is actually *Brent v. Staveris. Dev. Corp.*, 7 Haw.App. 40, 741 P.2d 722 (1987). In *Brent*, this court held that the trial court did not abuse its discretion when, at a hearing to confirm the sale of foreclosed property, it rejected the highest auction bid for the property, entertained further bids in open court, and confirmed the sale to the highest bidder at the confirmation hearing.

**6.** The "Order Approving Commissioner's Report, Confirming Foreclosure Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Private Sale of Personal Property" (Order Confirming Sale) was actually filed on May 15, 1998.

a. Commissioner's fees and costs in the amount of $312.50;

b. Attorneys [sic] fees and costs incurred by [FHB's attorneys] on behalf of FHB in the amount of $6,362.41 as evidenced by that certain Declaration of Counsel submitted in support of [FHB's] Reply to [Hayashi's] Memorandum in Partial Opposition to [FHB's] [Motion for Cancellation] filed herein on May 28, 1999 (the "Reply");

c. Additional amounts due to FHB under the loan hereinafter described in the amount of $11,251.29 plus a per diem amount of $28.14 from May 25, 1999 until the date of closing of the sale of the [s]ubject [p]roperty herein. Such amount reflects the additional amounts due to FHB from June 19, 1998, a date thirty-five (35) days after the entry of the Order [Confirming Sale] herein by which time [Hayashi] should have completed the sale of the [s]ubject [p]roperty as evidenced by the Declaration of Gary Y. Kawamoto [(Kawamoto)] submitted in support of the Reply[7]; and

d. The additional sum of $2,501.00, which sum reflects the difference between the confirmed sales price to [Hayashi] as reflected in the Order [Confirming Sale] and the confirmed sales price as hereinafter described.

(Footnotes added.) A separate Judgment based upon the Order Cancelling Sale was filed on the same date. Hayashi timely appealed the Order Cancelling Sale and the Judgment on September 2, 1999.

---

7. The Declaration of Gary Y. Kawamoto (Kawamoto), the Assistant Vice President of FHB's Real Estate Loan Servicing Department, was included in "[FHB's] Reply to [Hayashi's] Memorandum in Partial Opposition to FHB's Motion for Cancellation of Sale, Forfeiture of Deposit, to Re-open Auction Sale to Allow Re-bidding, and for Order Confirming Foreclosure Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Private Sale of Personal Property." In his declaration, Kawamoto indicated that as of May 25, 1998, the amount due and owing on the mortgage by Timothy was $159,467.95. Kawamoto also stated in his declaration that

[t]he per diem rate after May 25, 1999 is $28.14 at the current interest rate of 7.875% per annum through September 1, 1999. The per diem interest rate may change after that date....

---

## DISCUSSION

### A. *Whether the Circuit Court Had Subject Matter Jurisdiction to Award Damages Against Hayashi*

■ Hayashi initially contends that the circuit court did not have subject matter jurisdiction to enter an award of damages against him. Hayashi points out that although the Order Confirming Sale

> specifically reserved jurisdiction in the case for the [c]ourt to "assist [Hayashi] ... to gain such possession (of the [subject] [p]roperty), including issuing a writ of possession, if necessary," and also reserved jurisdiction "over all claims of Defendant [AAOC] against [Timothy][,]"

it did not reserve jurisdiction over any claim for damages against Hayashi. Thus, Hayashi maintains, the circuit court "did not have jurisdiction over any subsequent claims for damages against [Hayashi], and the August 6, 1999 Order [Cancelling Sale] and Judgment are thus invalid as a matter of law."

For the following reasons, we disagree with Hayashi.

First, by statute, the state legislature has vested the circuit courts with general jurisdiction over "[c]ivil actions and proceedings," Hawai'i Revised Statutes (HRS) § 603-21.5(a)(3) (Supp.2000), and specific jurisdiction over mortgage foreclosure actions. *See* HRS chapter 667, part I (1993 & Supp. 2000).[8] HRS § 603-21.9 (1993) also provides that

> 5. The amounts currently due and owing reflect an increase of $14,281.83 over and above the amounts confirmed by this [c]ourt pursuant to the [Order Confirming Sale] filed herein on May 15, 1998.

8. At the time the underlying mortgage foreclosure action was filed against Timothy, Hawai'i Revised Statutes (HRS) chapter 667 (1993), entitled "Mortgage Foreclosures," consisted of ten statutory sections, HRS §§ 667-1 to 667-10. These sections set forth very general procedures for instituting a mortgage foreclosure action in the circuit court. Pursuant to Act 122, 1998 Haw. Sess. L. § 2, at 477, HRS chapter 667 was amended by designating §§ 667-1 to 667-10 as "part I, entitled: 'FORECLOSURE BY ACTION OR FORECLOSURE BY POWER OF SALE.' " A new part II was added to HRS chapter 667, entitled "ALTERNATE POWER OF SALE FORE-

[t]he several circuit courts shall have power:

(1) To make and issue all orders and writs necessary or appropriate in aid of their original ... jurisdiction;

. . . .

(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

Thus, the circuit court in this case was statutorily authorized, in aid of its original jurisdiction over mortgage foreclosure actions, to enter appropriate orders against Hayashi after. he defaulted on his agreement to purchase the mortgaged property at the foreclosure sale. ·

 Second, it is generally accepted that

[a] successful bidder at a judicial sale becomes a so-called quasi party to the proceedings, by virtue of the bid, even though originally not a party to the action or proceeding in which the sale was ordered, for some purposes, including the right to urge or to oppose confirmation. Purchasers subject themselves to the jurisdiction of the court in the original suit as to all matters connected with the sale and therefore have the right to interfere in the proceedings for their own benefit and protection and· to claim equitable relief. They become subject to the future orders of the court, and are bound as parties by the decree· of the court confirming or setting aside the sale. They can be compelled by summary processes of the court, so long as the court's control over the cause and the parties continues, to perform their agreement specifically and comply with the terms of the purchase, by payment or otherwise.

47 Am. Jur.. 2d *Judicial Sales* § 162, at 573 (1995) (footnotes omitted). Since Hayashi bid on the subject property and his bid was accepted by the circuit court when it entered the Order Confirming Sale, Hayashi submitted himself to the jurisdiction of the circuit court and was subject to subsequent enforcement orders by the circuit court.

Finally, for reasons of judicial economy, we are not inclined to hold that a court that enters an order confirming sale does not

CLOSURE PROCESS." The purpose of part II of HRS chapter 667 was "to establish an alternate nonjudicial foreclosure process." Hse. Conf. Comm. Rep. No. 75, in 1998 House Journal, at 979.

We note that part II of HRS chapter 667 establishes a much more detailed process for foreclosing upon a mortgage than part I, which is applicable to this case. Additionally, HRS §§ 667-29 and 667-30 (Supp.2000) spell out, with much more precision, the obligations of a successful bidder at a nonjudicial mortgage foreclosure sale and the remedies available against a bidder who fails to complete his or her purchase of the mortgaged property:

[§ 667-29] **Authorized bidder; successful bidder.** Any person, including the foreclosing mortgagee, shall be authorized to bid for the mortgaged property at the public sale and to purchase the mortgaged property. The highest bidder who meets the requirements of the terms and conditions of the public sale shall be the successful bidder. The public sale shall be considered as being held when the mortgaged property is declared by the foreclosing mortgagee as being sold to the successful bidder. When the public sale is held, the successful bidder at the public sale, as the purchaser, shall make a nonrefundable downpayment to the foreclosing mortgagee of not less than ten per cent of the highest successful bid price. If the successful bidder is the foreclosing mortgagee or any other mortgagee having a recorded lien on the mortgaged property before the recordation of the notice of default under section 667-23, the downpayment requirement may be satisfied by offset and a credit bid up to the amount of the mortgage debt.

[§ 667-30] **Successful bidder's failure to comply; forfeiture of downpayment.** If the successful bidder later fails to comply with the terms and conditions of the public sale or fails to complete the purchase within forty-five days after the public sale is held, the downpayment shall be forfeited by that bidder. The forfeited downpayment shall be credited by the foreclosing mortgagee first towards the foreclosing mortgagee's attorney's fees and costs, then towards the fees and costs of the power of sale foreclosure, and any balance towards the moneys owed to the foreclosing mortgagee. The foreclosing mortgagee, in its discretion, may then accept the bid of the next highest bidder who meets the requirements of the terms and conditions of the public sale or may begin the public sale process again.

have jurisdiction to enforce its order, since such a holding would effectively require an independent action to be brought each time a confirmed purchaser at a mortgage foreclosure sale defaults, thus resulting in an unnecessary multiplicity of suits, delay, and added costs. *Marsh v. Nimocks,* 122 N.C. 478, 29 S.E. 840 (1898).

B. *The Award of Damages in Excess of Hayashi's Downpayment Deposit*

Hayashi posits a number of arguments as to why the circuit court erred in awarding FHB damages in excess of his downpayment deposit of $7,200.00: (1) FHB never requested the relief granted by the circuit court; (2) FHB failed to promptly move to cancel the sale, as required by Civil Administrative Order (CAO) No. 6.2, and therefore, failed to mitigate its damages; (3) Hayashi was denied due process on FHB's claim for damages in excess of his deposit; and (4) the circuit court imposed Timothy's loan obligations to FHB on Hayashi, even though Hayashi was not a party to Timothy's mortgage loan with FHB.

We address each of his arguments separately.

1.

Hayashi initially argues that the circuit court should not have awarded FHB damages in excess of his deposit because FHB never requested such relief. Hayashi points out that pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 7(b)(1), every motion shall "be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought," and that FHB, in its Motion for Cancellation, requested the following relief:

2. The deposit of [Hayashi] be forfeited to cover damages suffered by FHB, the additional expenses incurred by [Ishibashi], additional accrued interest, fees, costs, and expenses incurred by FHB, including attorneys' fees and costs, and any other expenses the [c]ourt deems just, as a result of [Hayashi's] failure to close the sale of the [s]ubject [p]roperty within a reasonable period of time (the "damages");

3. Should the deposit of [Hayashi] be insufficient to cover the damages, that

such insufficiency be paid out of additional funds held by [Security Title] in an escrow account opened by [Hayashi] for the purpose of completing the sale of the subject property herein, with the balance of said escrow account after payment of all damages being returned to [Hayashi.]

Hayashi argues that since there were no funds, other than his $7,200.00 deposit, held by Security Title at the time of the hearing on FHB's Motion for Cancellation, FHB's request for damages in excess of the deposit was moot and FHB's "only cognizable request ... was for forfeiture of [Hayashi's] deposit."

Hayashi fails to mention, however, that in its Motion for Cancellation, FHB also requested the following relief:

6. The [c]ourt ... approve all additional fees and costs attributable to [Hayashi's] failure to close the sale of the [s]ubject [p]roperty[.]

The source of funds to pay for damages suffered by FHB was thus incidental to FHB's request for such damages.

Moreover, it appears to be undisputed that at the time FHB filed its Motion for Cancellation, the escrow account Hayashi had established with Security Title included an amount significantly greater than the amount he had initially deposited as downpayment for the subject property. To the extent that Hayashi, prior to the hearing on FHB's Motion for Cancellation, removed any excess funds from escrow, he cannot seriously argue that such removal mooted FHB's claim for damages in excess of the deposit amount.

2.

We turn next to Hayashi's argument that FHB should be barred from recovering damages from Hayashi because it failed to promptly move to cancel the sale, as required by CAO No. 6.2.

CAO No. 6.2 provides as follows:

To avoid delays in closing the sales in foreclosure actions, attorneys and successful bidders shall have the conveyance recorded within 35 days from the date the order confirming sale is entered. The mo-

tion to confirm sale and the order confirming sale shall be filed within 20 days of the sale unless there are exceptional circumstances.

If the successful bidder is a creditor, the court may not allow per diem interest on the debt to that creditor for more than 35 days after the order confirming sale is entered. After 35 days, the [c]ourt may allow interest on the unsatisfied portion of the debt only.

If the successful bidder is not a creditor and the bidder fails to close within the 35[-]day period, then one of the creditor's attorneys should file a motion for cancellation of the sale and for possible forfeiture of all or a portion of the deposit, unless the delay was justified.

CAO No. 6.2 is part of the Circuit Court Civil Administrative Orders which were adopted on April 30, 1998 by the administrative judges of the First, Second, Third, and Fifth Circuit Courts of the State of Hawai'i, to take effect upon approval by the Chief Justice. Pursuant to an order filed on May 1, 1998, the Chief Justice approved the CAOs, effective June 1, 1998, as "orders of general applicability." By an order dated May 18, 1998, the Chief Justice extended the effective date of the CAOs to July 1, 1998. CAO No. 6.2 was therefore not even in effect at the time: the Decree in this case was filed on December 12, 1997; Ishibashi filed her Commissioner's Report on February 12, 1998; FHB filed its Motion to Confirm on March 3, 1998; and the circuit court filed its Order Confirming Sale on May 15, 1998.

Even if CAO No. 6.2 were in effect and applicable to this case, we do not interpret its language as mandating strict compliance with the time limits set forth in the order. In approving the CAOs, the Chief Justice specifically noted in his May 1, 1998 order:

[I]t appears that the [CAOs]: (1) are of general applicability; (2) are not inconsistent with the [HRCP], the Hawai'i Rules of Penal Procedure, and the Rules of the Circuit Courts of the State of Hawai'i or other Rules of Court; and (3) are not inconsistent with any applicable law. *It further appears that these administrative orders will further the orderly processing of cases within the several circuit courts of the State of Hawai'i.*

(Emphasis added.) CAO No. 6.2 was therefore not intended to create substantive obligations or rights but to provide procedural guidance to litigants in mortgage foreclosure cases and further the orderly processing of such cases.

The stated purpose of CAO No. 6.2 is "[t]o avoid delays in closing the sales in foreclosure actions[.]" There are no consequences set forth in CAO No. 6.2 for failure to: (1) file, within twenty (20) days of the sale, a motion to confirm sale and the order confirming sale; (2) record the conveyance within thirty-five (35) days from the date of entry of the order confirming sale; or (3) close the sale within thirty-five (35) days from the date of entry of the order confirming sale. Furthermore, CAO No. 6.2, by its express terms, provides that "[i]f the successful bidder is not a creditor and ... fails to close within the 35[-]day period, then one of the creditor's attorneys *should* file a motion for cancellation of the sale and for possible forfeiture of all or a portion of the deposit, unless the delay was justified." (Emphasis added.) The provisions of CAO No. 6.2 thus do not confer upon the parties any affirmative rights to compliance with the time periods set forth in CAO No. 6.2., and the time periods set forth in CAO No. 6.2 appear to be directory rather than mandatory. *See Jack Endo Elec., Inc. v. Lear Siegler, Inc.,* 59 Haw. 612, 616-17, 585 P.2d 1265, 1269 (1978).

■ Although CAO No. 6.2 is directory in nature, we agree with Hayashi that FHB had a duty to mitigate its damages. FHB's failure to file its Motion for Cancellation until almost ten months after the Order Confirming Sale raises genuine questions about whether FHB reasonably mitigated its damages against Hayashi. The circuit court must address the mitigation issue on remand.

3.

■ Hayashi claims that he was denied due process with respect to FHB's claim for damages in excess of his deposit. He explains that

360

[Hayashi] had no "notice" of the claim prior to [the] June 3, 1999 [hearing], because it was not stated in FHB's Motion [for Cancellation]. There was no "hearing" on that claim. It was not argued at the hearing on FHB's [M]otion [for Cancellation]. It was not even addressed in the [c]ourt's oral ruling on FHB's Motion [for Cancellation] as to [Hayashi].

Hayashi maintains that the first time that FHB claimed that it was entitled to damages in excess of Hayashi's downpayment deposit was "after the hearing on the Motion as to [Hayashi], after the auction—and, as FHB's counsel well knew, after [Hayashi's] counsel had left the [c]ourt." "Because he had no notice, and no 'opportunity to be heard at a meaningful time and in a meaningful manner' as to FHB's belated claim," Hayashi argues, the assessment of damages against him in excess of his deposit cannot stand.

FHB contends that Hayashi "was given notice of the full extent of damages for which FHB sought to hold him liable and an opportunity to be heard on the matter." Moreover, "[h]is decision not to challenge these amounts either in his pleadings or in open court, and his attorneys' decision not to return for the conclusion of the hearing on the Motion for Cancellation does not amount to [Hayashi] being denied due process." We agree with FHB.

The parties concede that a property interest within the meaning of due process is at issue in the instant case. Accordingly, our inquiry shifts to the procedural mandates of the due process clause. The Hawaiʻi Supreme Court has explained that

[d]ue process is not a fixed concept requiring a specific procedural course in every situation. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).... The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest. *Matthews [Mathews] v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d

18, 32 (1976); *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 605-606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751, 756-57 (1975).

Determination of the specific procedures required to satisfy due process requires a balancing of several factors: (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail. *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33; *Silver v. Castle Memorial Hosp.*, 53 Haw. [475,] 484, 497 P.2d [564,] 571 [(1972)].

*Sandy Beach Defense Fund v. City Council of Honolulu*, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) (some citations omitted).

As discussed above, Hayashi's counsel was aware at the time of the hearing that the damages FHB had prayed for exceeded his deposit. He had the opportunity to challenge, at a hearing, the damages that FHB was seeking. Hayashi was thus given adequate due process "notice and an opportunity to be heard at a meaningful time and in a meaningful manner" at the hearing on the Motion for Cancellation.

4.

In its Order Cancelling Sale, the circuit court awarded FHB damages in the amount of $11,251.29, plus "a per diem amount of $28.14 from May 25, 1999 until the date of closing of the sale of the [s]ubject [p]roperty herein." The circuit court explained that "[s]uch amount reflects the additional amounts due to FHB from June 19, 1998, a date thirty-five (35) days after the entry of the Order [Confirming Sale] herein by which time [Hayashi] should have completed the sale of the [s]ubject [p]roperty as evidenced by the Declaration of [Kawamoto] in support of [FHB's] Reply[.]"

In the referenced Declaration, Kawamoto, an Assistant Vice President of FHB in its Real Estate Loan Servicing Department,

stated that as of May 25, 1998, Timothy owed FHB, under the terms of his adjustable rate promissory note, the following amounts:

| | |
|---|---|
| Principal Balance: | $128,651.35 |
| Interest 9/1/96-8/31/97: | 9,648.84 |
| Interest 9/1/97-8/31/98: | 10,292.16 |
| Interest 9/1/98-5/25/99: | 7,429.58 |
| Late Charges: | 229.30 |
| Escrow Advances: | 2,516.72 |
| Appraisal Fee: | 500.00 |
| Title Report: | 200.00 |
| TOTAL: | $159,467.95 |

*The per diem rate of interest after May 22, 1999 is $28.14 at the current interest rate of 7.875% per annum through September 1, 1999.* The per diem interest rate may change after that date. Pursuant to the terms of the promissory note and first mortgage, [Timothy] is also liable for any and all further protective advances made by FHB to protect its first mortgage interest and for all reasonable attorneys' fees and costs incurred by FHB in this matter.

(Emphasis added.)

It is not entirely clear from the record on appeal exactly how the circuit court arrived at the $11,251.29 figure it awarded FHB as damages. It seems clear, however, that the circuit court calculated Hayashi's damages based on the interest and other charges that Timothy had agreed to pay under his promissory note to FHB. Furthermore, the circuit court, in awarding FHB additional per diem damages "from June 19, 1998, a date thirty-five (35) days after the entry of the Order [Confirming Sale] herein by which time [Hayashi] should have completed the sale of the [s]ubject [p]roperty" seems to have awarded damages based on that portion of CAO No. 6.2, which states:

> To avoid delays in closing the sales in foreclosure actions, attorneys and successful bidders shall have the conveyance recorded within 35 days from the date the order confirming sale is entered....
>
> ....
>
> · If the successful bidder is not a creditor and the bidder fails to close within the 35[-]day period, then one of the creditor's attorneys *should file a motion for cancellation of the sale and for possible forfei-*

*ture of all or a portion of the deposit,* unless the delay was justified.

(Emphasis added.)

For the following reasons, we conclude that the circuit court erred in awarding FHB such damages.

a.

▆▆▆ We note at the outset that "[i]n judicial sales, the court is the vendor [and][t]he confirmation of sale is the equivalent of a valid contract of sale. Consequently, application of contract law is appropriate when determining whether or not to set aside a judicial sale[.]" *First Trust Co. of Hilo v. Reinhardt,* 3 Haw.App. 589, 592, 655 P.2d 891, 893-94 (1982) (citations omitted).

The terms of a contract with a purchaser at a judicial sale are typically "set forth by statute, rule of court, or decree of sale, and announced in the notice or advertisement." 47 Am. Jur. 2d *Judicial Sales* § 207, at 594.

> The terms may include the amount of deposit required by the bidder and the form of that deposit, which is typically cash or a certified check. The judgment may specify whether the purchaser will take title subject to installments of unpaid taxes, water and sewer rents. In addition, it may specify the number of times within which the purchaser must accept title and pay the balance as well as what the liability will be if purchaser fails to do so. This may include forfeiture of the deposit, interest and liability for any loss upon resale if the price is lower.

4 R. Powell & M. Wolf, *Powell on Real Property* § 37.40, at 37-270 (2000). In this case, Ishibashi distributed a fact sheet to potential purchasers which included the following terms of sale:

> · NO UPSET PRICE. Property sold in "as-is" condition at public auction with 10% of highest bid payable in cash, certified or cashiers check at the close of auction, balance payable upon delivery of title. Potential bidders must be able to provide proof of the ability to comply with the 10% bid requirement prior to participating in the public auction. Buyer shall pay all costs of closing including escrow, conveyance & re-

cordation fees, and conveyance taxes and is responsible for securing possession of the property upon recordation. SALE SUBJECT TO COURT CONFIRMATION.

The Order Confirming Sale did not specifically incorporate the foregoing Terms of Sale and contained very few terms that governed Hayashi's purchase of the subject property.[9]

Indeed, noticeably absent from the Order Confirming Sale was a term specifying the date by which Hayashi was required to pay the balance of his purchase price. In the absence of a due date for Hayashi's payment established by statute, court rule, or court order, we conclude that the circuit court wrongly construed CAO No. 6.2, which was not even in effect at the time, as imposing an absolute date for closing the sale and imposing a duty on Hayashi to pay the balance of his purchase price within thirty-five (35) days of the entry of the Order Confirming Sale. The circuit court also erred in implicitly concluding that Hayashi breached his contract to purchase the subject property as of the thirty-fifth day following the entry of the Order Confirming Sale and in awarding interest damages against Hayashi from the thirty-fifth day after the entry of the Order Confirming Sale. *Cf. Makani Dev. Co. v. Stahl,* 4 Haw.App. 542, 544-45, 670 P.2d 1284, 1287 (1983) (holding that where the agreement of judicial sale provided specifically that the high bidder's deposit would be forfeited if he "failed to close within 45 days of the sale," the trial court was authorized to condition the withdrawal of the successful bidder's bid on the payment of certain expenses and damages, including "interest ... on the principal sum due, as and for damages caused by the delay in closing").

Although we conclude that the circuit court erred in relying on CAO No. 6.2 to impose a duty on Hayashi to complete his purchase within thirty-five days after the entry of the Order Confirming Sale, we also conclude that the circuit court was authorized, in the absence of a closing date specified in the Order Confirming Sale, to determine a reasonable closing date for Hayashi's completion of his purchase. On remand, the circuit court is instructed to do just that.

b.

Generally, when a purchaser at a judicial sale fails to comply with his or her bid and fulfill the terms of the contract of purchase, several courses of action are open to the court:

(1) it may set aside the sale, release the purchaser, and decree a resale; (2) it may confirm the sale and permit an action at law to be instituted against the purchaser and its sureties, to recover the amount of the bid, or damages; (3) it may have recourse to the vendor's lien reserved for the price, or to the purchase-money mortgage or other security that may have been given; (4) it may specifically enforce compliance by summary proceedings against the purchaser; and in some jurisdictions, its successors or sureties; or (5) it may order a resale at the purchaser's risk, with a provision that he or she shall be held for the deficiency and costs of resale in case the property brings less than the bid at the first sale.

47 Am. Jur. 2d *Judicial Sales* § 223, at 602 (footnotes omitted).

In this case, rather than enforce the terms of the sale and hold Hayashi to his

---

9. Among the only terms in the Order Confirming Sale that affected Purchaser Appellant Ralph H. Hayashi's (Hayashi) purchase of the subject property were the following:

2. In accordance with the Decree, the sale of the subject property to [Hayashi] at a price of $71,501.00 is ratified, approved and confirmed. Upon receipt of the full purchase price, [Commissioner Edith Ishibashi] shall make a good and sufficient conveyance of the subject property to [Hayashi] or to [Hayashi's] written order. *The sale shall be subject to all unpaid real property taxes and assessments.*

. . . .

8. Upon delivery to [Hayashi] or his written order of the conveyance authorized and directed by this order, [Hayashi] or [Hayashi's] written order shall be entitled to immediate and exclusive possession of all of the subject property. . . .

. . . .

10. Private sale of any abandoned personal property found on the subject property after conveyance to [Hayashi] is hereby allowed without the need or involvement of the sheriff's office to partially satisfy the pending deficiency judgment in favor of FHB in this matter.

(Emphasis added.)

purchase price, the circuit court chose the fifth option and ordered a resale of the subject property. Since the resale of the subject property brought in less than the price bid by Hayashi at the first sale, the circuit court properly awarded FHB the difference between Hayashi's confirmed bid price and the bid price obtained for the subject property.

 Additionally, the circuit court properly awarded FHB damages to cover the expenses that were incurred as a result of the need to resell the subject property following Hayashi's breach of the terms of his purchase, since it is well-settled that "when a purchaser at a judicial sale fails to complete the sale, the expenses of sale including attorney's fees may be imposed upon [the purchaser]." *Powers v. Shaw*, 1 Haw.App. 374, 378, 619 P.2d 1098, 1102 (1980). Thus, the circuit court correctly held Hayashi liable for the reasonable resale expenses incurred by FHB, including Ishibashi's fees, attorneys' fees incurred by FHB's counsel, and the difference between the confirmed sales price and the amount actually received by FHB.

c.

 However, we conclude that the circuit court improperly awarded damages to FHB based on Timothy's underlying loan obligation to FHB to which Hayashi was not a party. The terms of Hayashi's purchase of the subject property did not require Hayashi to assume Timothy's obligations to FHB under Timothy's promissory note or mortgage. Therefore, it was improper for the circuit court to order Hayashi to pay interest damages based on the principal amount owed by Timothy under his loan. When the circuit court entered its Order Confirming Sale to Hayashi at Hayashi's bid price of $71,501.00, that amount was the principal owed by Hayashi under his contract to purchase the subject property. Any damages assessed for Hayashi's delay in closing his purchase within a reasonable period of time must therefore be based on the $71,501.00 principal amount, and not on the $128,651.35 principal amount that Timothy owed to FHB.

 It was also improper for the circuit court to order Hayashi to pay interest damages based on the rate of interest Timothy had agreed to pay FHB under his adjustable rate promissory note. Instead, since no interest rate was set forth in the Order Confirming Sale, interest damages should have been calculated at the ten (10) percent interest rate allowed by HRS § 478-2 (1993), which provides, in relevant part:

**Legal rate; computation.** When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year[.]

*See Makani Dev. Co.*, in which we held that a successful bidder who was allowed to withdraw his bid was properly ordered to pay delay damages based upon the "statutory interest rate applicable to judgments, set forth in HRS § 478-2 (1976, as amended)[,]" since

[b]y virtue of the delay, Makani had been deprived of the benefit of the proceeds of the original sale and we deem it appropriate to use the statutory rate, since [the successful bidder's] activities delayed the entry of judgment herein.

4 Haw.App. at 550, 670 P.2d at 1290.

5.

 Hayashi also argues that the circuit court's Order Cancelling Sale

introduces a new, very substantial risk for prospective bidders at [Hawai'i] foreclosure sales. Heretofore, based on general practice and [CAO] No. 6.2, and the [c]ourt's instructions to [c]ommissioners, it was the understanding of [Hayashi] (and, [Hayashi] believes, the rest of the [Hawai'i] real estate community) that a *bidder's liability was limited to the 10 percent deposit he or she places in escrow after becoming the high bidder at the public auction.*

(Emphasis added.) Because of the inherent risks in an "as-is" transaction, and the buyer's limited ability to inspect the premises prior to bidding at the foreclosure sale, Hayashi argues, "the only concession historically made for bidders was that their liability was limited to their deposit." As a result of the circuit court's award of damages in excess of deposit, Hayashi states:

[B]idders at a [Hawai'i] foreclosure auction apparently face potentially limitless liability. That liability, apparently, can arise even *after* the creditor moves to cancel the sale. Such increased liability, and risk, will inevitably chill bidding at [Hawai'i] foreclosure sales. There will be fewer bidders willing to risk all of their personal assets, and those bidders who do appear will be bidding lower prices. In a state with as many foreclosures pending as [Hawai'i], that is a potentially disastrous result.

(Emphasis in original.)

We conclude that there is no merit to Hayashi's argument. As discussed above, an order confirming a judicial sale is "the equivalent of a valid contract of sale." *First Trust Co. of Hilo*, 3 Haw.App. at 592, 655 P.2d at 893. When the circuit court entered its Order Confirming Sale to Hayashi, therefore, Hayashi became contractually bound to meet his obligations under the order. When he breached his obligations, he was liable, in the absence of any statute, rule or order limiting his liability to the amount of his deposit,[10] to pay for the full measure of damages caused by his breach.

. C. *The Award of Attorneys' Fees to FHB*

 Hayashi argues that the circuit court abused its discretion in awarding attorneys' fees to FHB's counsel in the amount of $6,362.41. He explains that

[t]he *sole* basis for this award is the Declaration of FHB's counsel ... attached to FHB's reply memorandum filed May 28, 1999. [FHB's counsel] states in his Declaration that FHB has incurred a total of $13,037.07 in attorney's [sic] fees and costs in this case, and of that, $6,342.41 is attributable to delays caused by [Hayashi]. *There are no timesheets, no bills, no invoices, and no documentation whatsoever to support FHB's claim. There is no indication ... of what legal work was done, who performed the work, what was their hourly rate, and why that work was reasonable and necessary under the circumstances.* The record is devoid of any admissible evidence to support FHB's claim for attorney's fees and costs.

(Emphasis added.) Hayashi further explains that the lack of any documentation is particularly disturbing considering the . fact that "FHB took *no action* in [the circuit court] between May 15, 1998 and April 9, 1999. . . . What FHB's counsel did was prepare a Motion and a 9-page Memorandum in Support of Motion, and a 9-page Reply Memorandum, together with attached declarations." (Emphasis in original.) Accordingly, Hayashi argues that "[w]ithout any supporting documentation, it is impossible for the [c]ourt to determine whether an award of $6,342.41 in attorney's fees and costs is reasonable for that amount of work."

Relying on *Makani*, FHB maintains that it "took *significant* action outside of court as a result of [Hayashi's] failure to take title to the [s]ubject [p]roperty[,]" and that Hayashi engaged in "a series of out[-]of[-]court actions with FHB including, but not limited to conversations with the potential assignee, statements that he would close the sale, his deposits with escrow, and his 'settlement offers.' " Accordingly, FHB argues that "[t]he [c]ircuit [c]ourt's award of attorneys' fees was based on its recognition of the significant amount of time spent by FHB addressing the various forms of delay created by Hayashi."

In *Makani*, the lower court allowed the successful bidder at a public auction sale to withdraw his bid, conditioned on his payment of delay damages and expenses, including attorneys' fees. In allowing the withdrawal, this court explained that "[a]n award of attorney's fees will not be disturbed upon appellate review absent an abuse of discretion, and the fact that a trial court was not provided with an hourly breakdown is not grounds for reversal." *Makani Dev. Co.*, 4 Haw.App. at 548, 670 P.2d at 1289. However, we also noted, based on our review of the record, that

[d]uring the period between the making of the bid and its withdrawal, seven motions were filed: two by Makani, four by [the purchaser] and one by [the mortgagors]. Nearly two hours were spent in court during that period. The fourteen hours

---

10. As noted above, HRS chapter 667, part II, which provides for an alternate nonjudicial foreclosure process, appears to limit the liability of a confirmed successful bidder at a foreclosure sale to the amount of his ten (10) percent downpayment.

claimed by Makani's attorneys does not appear excessive. The court's handling of the matter clearly indicates that the court carefully exercised its discretion.

*Id.* Thus, the record amply supported the request for attorneys' fees.

In this case, the request of FHB's counsel for attorneys' fees does not include the level of detail of the attorneys' fees request in *Makani.* FHB's counsel did not indicate how many hours of work they were billing for, and the record on appeal indicates that the only motion FHB's counsel filed after the Order Confirming Sale was FHB's Motion for Cancellation. It is difficult for us to evaluate on appeal the propriety of the circuit court's award of attorneys' fees to FHB when the record does not provide any clues as to the type of services provided. Accordingly, we remand this case for a redetermination of the award of attorneys' fees.

## CONCLUSION

For the foregoing reasons, we vacate that part of the Order Cancelling Sale that ordered Hayashi to pay to FHB the following damages: (1) $11,251.29, plus a per diem amount of $28.14 from May 25, 1999 until the closing date of the sale of the subject property to FHB, which amounts were based on Timothy's underlying loan obligation; and (2) the award of $6,362.41 in attorneys' fees to FHB's attorneys. We remand this case to the circuit court for: (1) a determination of a reasonable closing date for Hayashi's purchase of the subject property; (2) a redetermination of the amount of delay damages, if any, awardable against Hayashi, based on the $71,501.00 principal amount owed by Hayashi and calculated from the reasonable closing date to be determined by the circuit court and at the statutory interest rate of ten (10) percent; and (3) a redetermination of the attorneys' fees awardable to FHB's attorneys, following the attorneys' submission of some support for their request for fees.

In all other respects the Order Cancelling Sale and the Judgment based on the Order Cancelling Sale are affirmed.