990 P.2d 134

**GE CAPITAL HAWAII, INC., Plaintiff–Appellee,**

v.

**Vic G. MIGUEL, Estrellita G. Miguel, Laureano B. Sanchez, and Hilaria G. Sanchez, Defendants–Appellants,**

**and**

**Director of Taxation, State of Hawai'i; John Does 1–50; Jane Does 1–50; Doe Partnerships 1–50; Doe Entities 1–50; and Doe Governmental Units 1–50, Defendants.**

**No. 21989.**

Intermediate Court of Appeals of Hawai'i.

Nov. 29, 1999.

Gary Victor Dubin, on the briefs, Honolulu, for Defendants–Appellants.

Allen I. Marutani, on the briefs, Honolulu, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Defendants–Appellants Vic G. Miguel (Vic), Estrellita G. Miguel (Estrellita), Laureano B. Sanchez (Laureano), and Hilaria G. Sanchez (collectively, Defendants–Appellants) appeal the circuit court's: (1) September 17, 1998 "Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Against All Defendants" (September 17, 1998 FsOF; CsOL; and Order); and (2) September 17, 1998 Judgment. We vacate in part, reverse in part, and remand.

In this opinion, we apply Hawai'i Rules of Civil Procedure (HRCP) Rules 56(e) and 803(b)(6), Hawai'i Rules of Evidence, Chapter 626, Hawai'i Revised Statutes (HRE Rule 803(b)(6)), and the rule that inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment.

## BACKGROUND

This is a suit brought by Plaintiff–Appellee GE Capital Hawai'i, Inc. (GECH) against Defendants–Appellants seeking foreclosure on Defendants–Appellants' property located at 2107 Nene Street, Kalihi, Honolulu, Hawai'i (the Property).

On May 17, 1996, GECH loaned Defendants–Appellants the principal sum of $392,000. In return, Defendants–Appellants executed a promissory note (the Note) for that amount in favor of GECH. Defendants–Appellants also executed a Mortgage, Security Agreement and Financing Statement (the Mortgage) pledging the Property as security for the Note.

GECH alleged that Defendants–Appellants subsequently failed to make the payments required by the Note. As a result, GECH, on May 1, 1998, filed a Complaint seeking the foreclosure of the Property and alleging in relevant part as follows:

8. That contrary to the terms and provisions of [the Note], as amended, and [the Mortgage], [Defendants–Appellants] have failed, neglected, and refused, and still fail, neglect, and refuse to pay the amounts due thereunder, in accordance with the payment schedule provided thereunder, and that accordingly, [GECH] elected to treat the entire amounts due thereunder to become immediately due and payable.

9. That [Defendants–Appellants], ..., owe [GECH] the principal sum of $389,-375.15, together with interest accrued to April 30, 1998 in the sum of $17,625.71, together with interest to accrue thereafter at the rate of $110.68 per day until paid, and together with late charges accrued in the sum of $643.80, and together with costs, expenses, and attorney's fees heretofore incurred and hereafter to be incurred.

On May 22, 1998, Defendants–Appellants filed an answer to GECH's Complaint (Answer). Under a section entitled "DEFENSES," Defendants–Appellants stated that they intended to assert the following:

1. unfair and deceptive business practices; and

2. material non-disclosure and misrepresentation.

On June 15, 1998, GECH filed Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure (SJ Motion). This SJ Motion was accompanied by the Affidavit of Gordon Okumoto (Okumoto) stating in relevant part as follows:

1. That he is the Loan Adjustment Specialist of [GECH], the Plaintiff in this case, has reviewed the records and files in the Plaintiff's possession regarding this matter, which records and files are kept by the Plaintiff in the ordinary course of business under the Affiant's custody and control, and based on the review has personal knowledge and is competent to testify as to the matters stated in this Affidavit, ... [.]

. . . .

8. That contrary to the terms and provisions of [the Note], as amended, and [the Mortgage], [Defendants–Appellants] have failed, neglected, and refused, and still fail, neglect, and refuse to pay the amounts due thereunder, in accordance with the payment schedule provided thereunder, and that accordingly, [GECH] elected to treat the entire amounts due thereunder to become immediately due and payable.

9. That [Defendants–Appellants], ..., owe [GECH] the principal sum of $389,-375.15, together with interest accrued to June 8, 1998 in the sum of $21,942.23, together with interest to accrue thereafter at the rate of $110.68 per day until paid, and together with late charges accrued in the sum of $643.80, and together with costs, expenses, and attorney's fees heretofore incurred and hereafter to be incurred.

On July 13, 1998, Laureano filed a Counterclaim against GECH. In it, Laureano stated that the loan was a "consumer loan ... on May 17, 1996 to refinance a prior mortgage on his principal home located at 2107 Nene Street, Honolulu, Hawaii [Hawai'i], and also to pay off other consumer debts." Laureano alleged that GECH understated the finance charges for the loan to Defendants–Appellants and contended that he was entitled to rescind the Note and the Mortgage under the Truth in Lending Act (TILA).[1] Specifically, Laureano stated in relevant part as follows:

---

1. 15 U.S.C.S. § 1635(a) (1993) of the Truth in Lending Act provides:

**Disclosure of obligor's right to rescind.** Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, ..., is or will be retained or acquired in any property which is used as the principal dwelling of the person to credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title ..., whichever is later, by notifying the creditor, ..., of his intention to do so.

8. On May 17, 1996, the day of consumation [sic] of the subject loan, [Laureano] was provided with a Disclosure Statement which stated that the Finance Charge was $121,109.60 and the Amount Financed was $392,000, which supposedly means that there is no prepaid finance charge for this $392,000 mortgage. See ***EXHIBIT "C"***

9. [GECH] also provided a Loan Settlement Statement listing the expenses as part of the disclosed amount financed.

Expenses:

| | |
|---|---|
| Credit Report Fee | $ 10.18 |
| Attorney's Fee | $ 75.00 |
| Loan Processing Fee | $100.00 |
| Total Expenses | $185.18 |

While the Credit Report Fee and the Attorney's Fee are ligitimate [sic] fees for any extension of credit secured by an interest in real property pursuant to 15 U.S.C. § 1605(e), the Loan Processing Fee is not an allowable expense that can be included as part of the amount financed. The Loan Processing Fee is a service fee imposed by the lender as overhead expenses in making the loan but passed on to the consumer. Unless this fee is specifically excluded elsewhere under TILA, it is a finance charge. 15 U.S.C. § 1605(d)[.] See ***EXHIBIT "D"*** attached to this Counterclaim.

10. [GECH] required the prepaid interest charge for the time period of May 22 to May 31 to be paid outside of the contract but failed to include it as part of the ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE (Section 900) of the final HUD Settlement Statement. The prepaid interest charges of $1,111.19 should have been listed on line 901 of the final HUD Settlement Statement. See ***EXHIBIT "E"*** attached to this Counterclaim.

11. [GECH] also overcharged [Laureano] by adding a mortgage release fee of $50 in the payoff amount of the prior [GECH] mortgage on [Laureano]'s home as follows:

Payoff Borrower(s) First Mortgage—GE Capital Loan # 18918

| | |
|---|---|
| Principal amount | 224,000.00 |
| Interest from 04/01/1996 thru 05/23/1996 | 2,325.69 |
| Release fee | 50.00 |
| Total Payoff | 226,375.69 |

[GECH] then charged the regular mortgage release fee of $20 as part of the loan settlement fees as follows: (Exhibit E)

(1200) GOVERNMENT RECORDING AND TRANSFER CHARGES

| | |
|---|---|
| Recording fees: Deed $20 Mrtg $20 | 40.00 |
| City/county tax/stamps: Mrtg $392 | 392.00 |
| Additional Recording Fees for r/m | 20.00 |

12. [GECH]'s Disclosure Statement understated the finance charges for this subject loan by the following amounts:

| | |
|---|---|
| Processing Fee | 100.00 |
| Prepaid Interest | 1,002.00 |
| Release fee | 50.00 |
| TOTAL UNDERSTATEMENT | $1,152.00 |

. . . .

13. The failure to provide a disclosure statement with all the required "material" information as to the true cost of credit to the consumer allows the consumer to rescind the transaction for up to 3 years after the consumation [sic] of the loan. 15 U.S.C. §§ 1635(a, f); 1635(I)(3)

14. On June 4, 1998, [Laureano] sent a notice of cancellation to [GECH] via certified mail. See ***EXHIBIT "F"*** attached to this Counterclaim. Regulation § 226.15(a)(2)

The Counterclaim sought rescission, reimbursement of all money paid, removal of the security interest on the residence, and an award of "any damages, costs and reasonable attorney's fees."

Laureano did not support the allegations of his Counterclaim with affidavits, and the exhibits he attached were not properly sworn to or certified as required by HRCP Rule 56(e).[2]

---

**2.** Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) states in relevant part that "[s]worn or certified copies of all papers or parts thereof

In their July 15, 1998 memorandum in opposition to GECH's SJ Motion, Vic and Estrellita stated in relevant part as follows:

The subject loan has been cancelled by [Laureano] on Monday, July 13, 1998 by certified mail and first class mail. A counterclaim alleging the violations of the Truth in Lending Act that allows a consumer to cancel a credit transaction if the required Notice of the right to cancel is not proper[ly] given to each consumer entitled to rescind the transaction and a disclosure statement that accurately states the finance charge for [the] loan.

Failure by [GECH] to provide the required disclosures are grounds to cancel the contract and void the security interest held by the creditor. The loan is automatically cancelled upon the reception of the consumer's notice that he is cancelling the contract. The consumer has up to three years to cancel the loan if the required disclosures are not made. 15 U.S.C. § 1635(b and f)[.]

There are now genuine issues of material fact that [preclude] summary judgment in this foreclosure action. The issue is now whether the rescission is valid or not. [Appellants] have brough[t] the [T]ruth in [L]ending [A]ct to this court's attention by filing a counterclaim on July 13, 1998[.]

Vic and Estrellita did not support their allegations with affidavits.

At the July 20, 1998 hearing on GECH's SJ Motion, Estrellita and Laureano appeared *pro se* for Defendants–Appellants. The court informed Defendants–Appellants as follows:

THE COURT: [The memorandum in opposition] was filed on July 15th by Mr. and Mrs. Miguel. And I have to say that the opposition is not adequate. There are no affidavits attached to it to verify what's contained in here. All you have really basically submitted to me is a copy of the

referred to in an affidavit shall be attached thereto or served therewith."

3. HRCP Rule 54(b) provides in relevant part as follows:

**Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim,

counterclaim and that's not an adequate defense to the motion for summary judgment.

. . . .

THE COURT:—you know, as much as possible you should get an attorney for one thing. You know, if you're going to represent yourself I have to assume you know what you're doing. You can't just come to court and you say you're pro se, you don't know what you're doing. So I have to urge to you [to] get an attorney. You should get an attorney because if you don't know what you're doing and you have defenses against this claim, I think—I think you'll have some trouble representing yourselves.

. . . .

THE COURT: All right. It's taken under advisement. I'll let you know of the Court's ruling.

Defendants–Appellants did not, thereafter, supplement the record with any affidavits. Almost two months after the July 20, 1998 hearing, the court filed its September 17, 1998 FsOF; CsOL; and Order granting GECH's SJ Motion and entered an interlocutory decree of foreclosure as a final judgment pursuant to HRCP Rule 54(b).[3]

## POINTS ON APPEAL

In this appeal, Defendants–Appellants argue that the circuit court: (1) was wrong when it entered summary judgment in favor of GECH because there was no admissible evidence supporting summary judgment; and (2) abused its discretion when it approved an HRCP Rule 54(b) certification while counterclaims and affirmative defenses "inseparably interrelated with Counts in the Complaint" remained to be adjudicated. We agree with argument (1) and do not reach argument (2).

or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

## STANDARD OF REVIEW

■ We review a trial court's grant or denial of summary judgment *de novo* under the same standard applied by the circuit court. *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (citation omitted); *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citation omitted). "[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[,] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Roxas,* 89 Hawai'i at 116, 969 P.2d at 1234 (citation omitted); *see* HRCP Rule 56(c).

## DISCUSSION

### 1.

HRCP Rule 56(e) states as follows:

**Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, in *Mednick v. Davey,* 87 Hawai'i 450, 457, 959 P.2d 439, 445 (App.1998), this court concluded in relevant part that "[i]t is only when the moving party satisfies its initial burden of production, that the burden 'shift[s] to the non-moving party to respond to the motion for summary judgment and demonstrate specific [material] facts, as opposed to general allegations, that present a genuine issue worthy of trial.' "

■ In the case at bar, the dispositive question is whether GECH satisfied its initial burden of production. HRCP Rules 56(c) and (e) specify that the initial burden of production is to show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law by: (1) filing an affidavit (a) made on personal knowledge, (b) setting forth such facts as would be admissible in evidence, and (c) showing affirmatively that the affiant is competent to testify to the matters stated therein; and (2) attaching thereto or serving therewith sworn or certified copies of all papers or parts thereof referred to in the affidavit.

GECH did not satisfy burden (2) and may not have satisfied burdens (1)(b) and (c). Our conclusion is supported by *Pacific Concrete Federal Credit Union v. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980). In that case, the lender relied on a person's affidavit referring to a ledger not submitted to the court in compliance with HRCP Rule 56(e). *Id.* at 337, 614 P.2d at 938. The Hawai'i Supreme Court ruled that (a) the circuit court should not have considered the information in the ledger because a copy of the ledger was not in evidence, and (b) the "[a]ffiant's testimony as to what was in the ledger was inadmissible hearsay." *Id.* at 337 n. 5, 614 P.2d at 938 n. 5.

In the instant case, the existence and terms of the Note and the Mortgage are undisputed, and copies of the Note and the Mortgage were properly submitted to the court. The Note stated, "Should default be made in the payment of any installment when due, the entire sum shall, at the option of the holder of this Note, at once become due and payable without notice and demand." Thus, GECH was not required to notify Defendants–Appellants of the acceleration of the Note. *See* 55 Am.Jur. *Mortgages* § 658 (1996).

■ GECH offered Okumoto's affidavit as evidence of (a) Defendants–Appellants' default and (b) the balance due. Okumoto's statements in his affidavit about "the records and files in the Plaintiff's possession regarding this matter" are hearsay. The question is whether Okumoto's statements are inadmissible hearsay.[4] In other words, is there an applicable hearsay exception? The answer is no.

HRE Rule 803(b)(6) states the following relevant hearsay exception:

> *Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

In relevant part, HRE Rule 803(b)(6) states that the combination of the following elements is an exception to the hearsay rule: a record of acts (a) made in the course of a regularly conducted activity, (b) made at or near the time of the acts, and (c) as shown by the testimony of the custodian or other qualified witness. In this case, Okumoto asserted that Defendants–Appellants were in default based on the "records and files in the Plaintiff's possession regarding this matter, which records and files are kept by the Plaintiff in the ordinary course of business under the Affiant's custody and control[.]" But the records and files were never introduced into evidence and Okumoto's testimony that the records and files were kept in the ordinary course of business does not satisfy requirements (a) and (b).

■ The federal court in the Seventh Circuit states, "A party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and in the absence of 'a gross miscarriage of justice,' the court may consider the defective affidavit." *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1267 (7th Cir.1986) (quoting *Klingman v. Nat. Indem. Co.,* 317 F.2d 850, 854 (7th Cir.1963)). In contrast, the rule in Hawai'i is that "[a]n affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment." *Nakato v. Macharg,* 89 Hawai'i 79, 89, 969 P.2d 824, 834 (App. 1998) (citations omitted).

## CONCLUSION

Accordingly, with respect to the circuit court's September 17, 1998 Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Against All Defendants, the findings of fact and conclusions of law is vacated; the Order Granting Plaintiff's Motion for Summary Judgment is reversed; the September 17, 1998 Judgment is vacated; and this case is remanded to the circuit court for further proceedings consistent with this opinion.

---

4. Hawai'i Rules of Evidence (HRE) Rule 802 states that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the [Hawai'i] supreme court, or by statute."

HRE Rule 801(3) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."