111 P.3d 1

Doctor Nui Loa PRICE, also known as Maui Loa Price; Kia Artrip, also known as Luukia Leiolani Sandra Maria Artrip; and Leilehualani K. Kane, Individually and as Co–Special Administrators of the Estate of Samuel Hubert Price, also known as Kamuela Price, Plaintiffs–Appellants,

v.

AIG HAWAI'I INSURANCE COMPANY, INC., Defendant–Appellees,

and

John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; and Doe Partnerships 1–10, Defendants.

No. 24596.

Supreme Court of Hawai'i.

March 29, 2005.

As Corrected on Denial of Reconsideration April 22, 2005.

 

Earle A. Partington, for plaintiffs-appellants.

Lisa M. Ginoza, Honolulu, R. John Seibert, and Kenneth J. Mansfield, Honolulu (of McCorriston Miller Mukai MacKinnon LLP), for defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; ACOBA, J., Dissenting in Part and Concurring in Part.

Opinion of the Court by MOON, C.J.

This appeal arises from an automobile accident that resulted when a vehicle operated by Timothy Mariano collided with a vehicle in which Samuel Hubert Price, aka Kamuela Price, [hereinafter, Kamuela] was riding. Kamuela died as a result of the accident. Thereafter, plaintiffs-appellants Doctor Nui Loa Price, aka Maui Loa Price; Kia Artrip, aka Luukia Leiolani Sandra Maria Artrip; and Leilehualani K. Kane, individually, and as co-special administrators of the Estate of Kamuela, [hereinafter, collectively, Price] made a claim and demand on defendant-appellee AIG Hawai'i Insurance Company, Inc. [hereinafter, AIG], the insurance company which insured the vehicle in which Kamuela was riding, for uninsured motorist (UM) benefits. However, AIG denied the claim on the basis that Mariano's vehicle was insured at the time of the accident. Price thereafter filed the instant lawsuit.

Price appeals from the circuit court of the first circuit's [1] December 26, 2001 judgment in favor of AIG. On appeal, Price argues that the circuit court erred in: (1) granting AIG's motion for summary judgment inasmuch as depositions attached to the motion and its supporting memoranda were inadmissible; and (2) awarding AIG attorneys' fees and costs without apportioning between assumpsit and non-assumpsit claims.

As discussed more fully *infra* in section III, we affirm the circuit court's order granting AIG's motion for summary judgment, vacate the award of attorneys' fees, and re-

---

1. The Honorable Sabrina S. McKenna presided over the matters pertinent to this appeal.

mand for a redetermination of the proper amount of attorneys' fees.

## I. BACKGROUND

### A. Factual Background

On March 6, 1998, a motor vehicle in which Kamuela was riding was struck by a 1988 Ford Thunderbird (Thunderbird) operated by Mariano. Kamuela died as a result of the injuries he sustained during the accident.

At the time of the collision, the vehicle in which Kamuela was riding was insured under a motor vehicle policy issued by AIG.[2] The policy carried $300,000 in UM benefits, but did not carry underinsured motorist benefits.

█ Mariano's Thunderbird was also insured at the time of the collision.[3] According to AIG's records, Mariano, who was also insured by AIG, first applied for and received a motor vehicle insurance policy from AIG on January 16, 1998, covering a 1983 Mazda. At that time, AIG's insurance policy provided in part:

DEFINITIONS

. . . .

J. *"Your covered auto"* means:

. . . .

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

. . . .

This provision (J.2) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

(Emphasis in original.) On February 28, 1998, Mariano purchased the Thunderbird and, within thirty days, he notified AIG of the purchase and requested that the Thunderbird be covered by the insurance policy. Thus, Mariano's insurance policy, which provided for bodily injury liability in the amount of "$20/40,000 Each Person/Accident," covered the Thunderbird "effective" February 28, 1998.

Following the accident, Price made a claim and demand on AIG for payment of $300,000 in UM benefits under Kamuela's insurance policy. AIG denied the claim on the basis that Mariano's Thunderbird was covered by an insurance policy at the time of the accident and, thus, was not an uninsured vehicle.

### B. Procedural Background

#### 1. Complaint

On December 8, 2000, Price filed a complaint against AIG, asserting that the Thunderbird was *not* insured at the time of the accident and, therefore, that AIG should have provided UM benefits to Price under Kamuela's insurance policy. In the complaint, Price alleged, *inter alia,* that "AIG has breached the terms of [Kamuela's] automobile insurance contract and the express or implied covenant of good faith and fair dealing by its conduct in denying uninsured motorist coverage of $300,000[.]" Specifically, Price asserted the following claims: (1) "breach of automobile policy"; (2) "collusion, fraud, misrepresentation, non-disclosure"; (3) "negligence"; (4) "violation of Hawai'i Revised Statutes [(HRS)] § 431–13–103"; (5) "breach of good faith [and] fair dealing"; (6) "punitive damages"; and (7) "treble damages." On January 2, 2001, AIG filed its answer to the complaint.

---

**2.** We note that the insurance policy covering the vehicle in which Kamuela was riding was in Kamuela's name.

**3.** We note that the parties vigorously disputed in the circuit court whether the Thunderbird was insured at the time of the collision. However, the circuit court found that, "as of March 6, 1998, the Mariano Thunderbird involved in the referenced accident was an insured vehicle." Neither party disputes this finding of fact on appeal and, thus, it is binding on this court. *Bremer v. Weeks*, 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004) (citing *Okada Trucking Co. v. Bd. of Water Supply*, 97 Hawai'i 450, 458, 40 P.3d 73, 81, *reconsideration denied*, 101 Hawai'i 233, 65 P.3d 180 (2002)).

## 2. Motion for Summary Judgment

On April 2, 2001, AIG moved for summary judgment on all of Price's claims, arguing that "the vehicle that hit the [Kamuela] vehicle was insured.... As a result, [Price is] not entitled to UM benefits under [Kamuela's] policy and no cause of action exists against AIG for its alleged wrongful denial of the claimed benefits." AIG attached eight exhibits to its motion, two of which are challenged on appeal as inadmissible. The contested exhibits are: (1) excerpts from a deposition given by Mariano during a tort action preceding the instant case, *Price, et. al. v. Mariano,* Civil No. 98–4662–10(CKH) (Haw. 1st Cir.); and (2) a copy of a deposition given in this case by the records custodian of the used car company that sold Mariano the Thunderbird. AIG's attorney declared that the copies of the depositions were "true and correct" copies. On May 4, 2001, Price filed a memorandum in opposition to AIG's motion.

On May 9, 2001, AIG filed a reply memorandum in support of its motion for summary judgment. AIG attached four new exhibits to the memorandum, two of which are challenged on appeal as inadmissible. The challenged exhibits are copies of two separate depositions taken of Michael Onofrietti, AIG's "[v]ice president and actuary and director of underwriting and product management." Again, AIG's counsel declared that the deposition copies attached to the memorandum were "true and correct copies."

On July 6, 2001, Price filed a supplemental memorandum in opposition to AIG's motion. On August 8, 2001, AIG filed a supplemental reply memorandum, to which it attached five new exhibits, four of which are challenged on appeal. The four exhibits consist of excerpts of depositions taken of: (1) Mariano; (2) Wendi Kealoha; (3) Rosie Reiley; and (4) Teresita Todani.[4] AIG's counsel declared

that the deposition copies were "true and correct copies."

On September 12, 2001, after a hearing on the matter, the circuit court entered findings of fact as follows:

(1) as of March 6, 1998, when a motor vehicle accident occurred that is the subject of the above-captioned action, an enforceable policy of motor vehicle insurance issued by [AIG] to [Mariano] was in effect; (2) on or about February 28, 1998, and under *First [Hawaiian] Ins. & Guar. Co. v. Financial Security Ins. Co.,* 72 Haw. 80, 807 P.2d 1256 (1991), [Mariano] acquired an insurable ownership interest in a 1988 Ford Thunderbird; (3) within thirty days of acquiring said ownership interest, [Mariano] notified [AIG] of this fact and of his request that the Thunderbird vehicle be covered under his existing policy of motor vehicle insurance; (4) that under pertinent provisions of said policy, and upon [Mariano]'s notification that he wanted coverage for the newly acquired vehicle, said vehicle was covered as of the date he acquired the car which date was before March 6, 1998; and (5) as of March 6, 1998, the Mariano Thunderbird involved in the referenced accident was an insured vehicle. As to each of the foregoing factual findings, the [c]ourt finds that there is no genuine issue of material fact.

Based on the foregoing, the circuit court granted AIG's motion for summary judgment.

## 3. Attorneys' Fees and Costs

On September 26, 2001, AIG filed a motion for "attorneys' fees in the amount of $21,386.00 and costs in the amount of $639.67."[5] Therein, AIG argued that it was entitled to attorneys' fees under HRS § 607–14 (Supp.1997),[6] inasmuch as "the 'essential

---

**4.** Inasmuch as the exhibits contained only excerpts of the depositions, the record on appeal does not indicate who Kealoha, Reiley, and Todani are. However, based on the statements made during the depositions, it appears that they are employed by AIG.

**5.** We note that, although AIG's motion reflects that AIG sought "costs in the amount of $639.67," the exhibit in support of the motion indicates that AIG incurred $648.31 in costs.

**6.** HRS § 607–14 states in pertinent part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit

character' of this action is one for contract breach and nothing else." AIG argued that "all of [Price]'s claims arose from [AIG]'s alleged breach of its insurance contract to provide UM benefits. Absent the existence of this alleged breach, not one of [Price]'s remaining claims could survive. All flowed inherently and inextricably from the alleged breach of contract."

In the memorandum in opposition to AIG's motion for attorneys' fees and costs, Price argued, *inter alia*, that, "[w]hile the underlying policy is a contract, the claims of [Price] were that [AIG]'s overt acts of collusion, non disclosure, fraud, and misrepresentation, formed the basis for bad faith and unfair claims settlement practices . . . and formed the basis for an award of punitive and treble damages for unfair and deceptive practices." Thus, Price maintained that "the nature of the case sounded in tort and not in contract" and that, therefore, the circuit court should deny AIG's request for fees.

On November 14, 2001, the circuit court, without holding a hearing on the matter or entering findings of fact or conclusions of law, granted AIG's motion for fees and costs. The court awarded AIG "reasonable [a]ttorney's fees of $20,000 and costs of $648.31."

On December 26, 2001, the circuit court entered its judgment in favor of AIG and restated its award of fees and costs. Price timely appealed therefrom.[7]

## II. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

 This court reviews a circuit court's grant or denial of summary judgment *de novo*. *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is well settled:

> to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party[.]

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

### B. Attorneys' Fees

 This court reviews the circuit court's denial and granting of attorney's fees under the abuse of discretion standard. The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003) (quoting *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 253, 990 P.2d 713, 723, *reconsideration denied*, (1999)).

## III. DISCUSSION

### A. Motion for Summary Judgment

 Price first contends that "the circuit court erred in granting summary judgment to [AIG] when the depositions offered in

7. On October 2, 2001, Price appealed from the circuit court's order granting AIG's motion for summary judgment, which was docketed as Supreme Court No. 24596. After the circuit court entered its judgment, Price filed a second notice of appeal therefrom on January 25, 2002, which was docketed as Supreme Court No. 24871. On March 1, 2002, this court consolidated both cases under Supreme Court No. 24596.

support of the motion for summary judgment were not properly authenticated and were therefore inadmissible."[8] Price reiterates the general rule that documentation submitted in support of a summary judgment motion must be properly sworn to or certified and that "an affidavit of counsel swearing to the truth or accuracy of exhibits does not authenticate exhibits not sworn to or certified by the preparer or custodian of those exhibits." Thus, Price argues that, because "there was no proper authentication of the deposition extracts offered by [AIG] in support of its motion for summary judgment[,] .... there was no basis for the circuit court to grant the motion[.]"

■ "[T]he rule in this jurisdiction ... prohibits an appellant from complaining for the first time on appeal of error to which he has acquiesced or to which he failed to object." *Okuhara v. Broida*, 51 Haw. 253, 255, 456 P.2d 228, 230 (1969) (citations omitted); *see also* HRS § 641–2 (2004) ("The appellate court ... need not consider a point that was not presented in the trial court in an appropriate manner."); *Craft v. Peebles*, 78 Hawai'i 287, 294, 893 P.2d 138, 145 (1995); Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(iii) (2004) (noting that an appellant's opening brief shall state "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.").

> There are sound reasons for the rule. It is unfair to the trial court to reverse on a ground that no one even suggested might be error. It is unfair to the opposing party, who might have met the argument not made below. Finally, it does not comport with the concept of an orderly and efficient method of administration of justice.

*Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 248, 948 P.2d 1055, 1089 (1997) (citation omitted).

In the instant case, Price did not object before the circuit court to the depositions that he challenges as inadmissible on appeal. Indeed, Price concedes as much when he states in his points of error that "[t]his issued [sic] was not raised in the circuit court[.]" Additionally, other than his assertion that the circuit court erred in reviewing allegedly inadmissible evidence, Price does not present any argument as to why this court should overlook his failure to object to the depositions. As such, it appears that Price has waived this issue on appeal.

However, in its answering brief, AIG points to two Intermediate Court of Appeals (ICA) cases supporting Price's assertion that, regardless of his failure to object to the depositions below, this court should address his argument that they were inadmissible. (Citing *GE Capital Hawaii, Inc. v. Yonenaka*, 96 Hawai'i 32, 25 P.3d 807 (App.2001); *GE Capital Hawaii, Inc. v. Miguel*, 92 Hawai'i 236, 990 P.2d 134 (App.1999)). In *Yonenaka* and *Miguel*, the ICA concluded that the appellants, who did not object to the admissibility of certain affidavits supporting the appellees' motions for summary judgment but argued for the first time on appeal that such affidavits constituted inadmissible hearsay, did *not* waive their evidentiary challenges on appeal. *Yonenaka*, 96 Hawai'i at 36, 39, 42, 25 P.3d at 811, 814, 817; *Miguel*, 92 Hawai'i at 240, 242, 990 P.2d at 138, 140. AIG requests this court to overrule these cases.[9] For the reasons stated below, we agree.

First, contrary to the ICA's holdings in *Yonenaka* and *Miguel*, this court has previously declined to address evidentiary challenges to affidavits relating to summary judgment motions without proper objection before the circuit court. *See, e.g., Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawai'i 398, 408–09, 422–23 n. 15, 992 P.2d 93, 103–04, 117–18 n. 15 (2000) (noting that, because the appellant failed to raise an evidentiary objection to an affidavit supporting a memoran-

---

8. In the argument section of his opening brief, Price does not indicate which depositions he challenges as inadmissible. However, in his "STATEMENT OF THE CASE," Price asserts that the circuit court erred in considering the eight depositions noted in Section I, *supra*.

9. We note that Price did not address *Yonenaka* or *Miguel* in his opening brief and did not file a reply brief in this case.

dum in opposition to a motion for summary judgment, "[the appellant] waived that issue." (Citation omitted)); *Acoba v. Gen. Tire, Inc.*, 92 Hawai'i 1, 12, 986 P.2d 288, 299 (1999) (stating that, because the appellant did not object to the appellee's affidavits in support of its motion for summary judgment, "[the appellant] is precluded from challenging the admission of [the appellee]'s pleadings and affidavits on appeal." (Citation omitted)). Second, although this court and the ICA may address arguments raised for the first time on appeal for plain error, neither *Yonenaka* nor *Miguel* reached their conclusions by relying on plain error and, instead, allowed for appellate review merely because "[a]n affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment." *Yonenaka*, 96 Hawai'i at 42, 25 P.3d at 817 (brackets in original); *Miguel*, 92 Hawai'i at 242, 990 P.2d at 140. Third, the majority of federal courts that have interpreted Federal Rules of Civil Procedure (FRCP) Rule 56(e) (1987), which is identical to the Hawai'i rule governing affidavits and exhibits in support of summary judgment motions, have held that a party who fails to object to inadmissible affidavits and exhibits waives the right to do so on appeal. *See, e.g., Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1066 n. 2 (7th Cir.2000); *Ruby v. Springfield R–12 Pub. School Dist.*, 76 F.3d 909, 912 n. 8 (8th Cir.1996); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 n. 12 (3d Cir.1996); *Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93, 97 n. 5 (D.C.Cir.1995); *Johnson v. United States Postal Serv.*, 64 F.3d 233, 236 (6th Cir.1995); *Jones v. Owens–Corning Fiberglas Corp. & Amchem Prods., Inc.*, 69 F.3d 712, 718 (4th Cir.1995); *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir.1994); *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir.1994); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d Cir.1985); *Associated Press v. Cook*, 513 F.2d 1300, 1303 (10th Cir.1975); *Auto Drive–Away Co. of Hialeah, Inc. v. Interstate Commerce Comm'n*, 360 F.2d 446, 448–49 (5th Cir.1966); *see also* 10B Wright, Miller & Kane, Federal Practice and Proce-

dure: Civil 3d § 2738 (2004) ("A party must move to strike an affidavit that violates [FRCP] Rule 56(e)[; t]he failure to do so will result in the waiver of the objection" (footnote omitted)); *cf. Wong v. Takeuchi*, 88 Hawai'i 46, 52 n. 4, 961 P.2d 611, 617 n. 4 (1998) ("Where a Hawai'i rule of civil procedure is identical to the federal rule, the interpretation of this rule by federal courts is highly persuasive." (Citation omitted)). As the Second Circuit stated:

> [T]o set aside a summary judgment under these circumstances would permit a party to make no response, or only a limited response, to a movant's allegedly defective affidavits, with the result that the motion would either be defeated or later set aside. In the absence of a gross miscarriage of justice, not present here, such a result is impermissible. Parties may not sandbag the court in this fashion, selectively opposing the points they choose, and on appeal claiming that the unopposed points were defectively presented and required no response.

*In re Teltronics Servs., Inc.*, 762 F.2d at 192. Accordingly, we overrule *Yonenaka* and *Miguel* to the extent that they, in direct contravention of this court's earlier decisions, set forth a general rule allowing for new evidentiary challenges on appeal to papers relating to summary judgment motions, without consideration of the plain error doctrine. In that regard, we also hold that challenges to such papers raised for the first time on appeal are waived absent plain error.

Based on the foregoing, and in light of the circuit court's unchallenged finding that the Thunderbird was insured at the time of the accident, which resolves the issue at the heart of this dispute, we hold that the circuit court did not err in granting AIG's motion for summary judgment.

### B. *Attorneys' Fees and Costs*

■ Price next contends that "the circuit court erred in failing to apportion [AIG]'s attorney's fees and costs between the assumpsit claims and the tort claims." [10] Price

---

**10.** We note that, although Price asserts that the circuit court erred in its award of *costs*, he fails

to present any argument concerning costs. Thus, we decline to address whether the circuit

states that "the circuit court awarded [AIG] 100% of its claim for attorneys' fees and costs and refused to apportion that award notwithstanding that [he] expressly asked the circuit court to do so." Price argues that his "second claim in the complaint was for the affirmative torts of collusion, fraud, misrepresentation and non-disclosure. Fees and costs for these torts can be practically apportioned from the fees and costs for the claims arising out of the insurance contract." Thus, he asserts that "the circuit court had an obligation to make a fair apportionment and its failure to do so is clear error."

In the instant case, AIG requested attorneys' fees pursuant to HRS § 607–14, asserting that all of Price's claims were in the nature of assumpsit. On the other hand, Price maintained that "the nature of the case sounded in tort and not in contract." Therefore, the issue of apportionment between assumpsit and non-assumpsit claims was clearly before the circuit court. However, the circuit court did not provide any explanation for its award of $20,000.00 in fees rather than $21,386.00 as requested.[11] Thus, although the record on appeal indicates that AIG was awarded only a portion, albeit a substantial portion, of its requested fees, it does not reflect whether the court apportioned fees between assumpsit and non-assumpsit claims. As such, we cannot effectively review whether the circuit court abused its discretion in awarding attorneys' fees as it did.

We take this opportunity to remind all judges to specify the grounds for awards of attorneys' fees and the amounts awarded with respect to each ground. Without such an explanation, we must vacate and remand awards for redetermination and/or clarification. Cf. Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 445, 32 P.3d 52, 89 (2001); First Hawaiian Bank v. Timothy, 96 Hawai'i 348, 365, 31 P.3d 205, 222 (App.2001); Forbes v. Hawaii Culinary Corp., 85 Hawai'i 501, 503, 511, 946 P.2d 609, 611, 619 (App. 1997). The instant case is no exception. Therefore, we vacate and remand the No-

vember 14, 2001 award of attorneys' fees for redetermination.

## IV. CONCLUSION

Based on the foregoing, we: (1) vacate the award of attorneys' fees as determined in the November 14, 2001 order and referred to in the December 26, 2001 judgment; (2) remand to the circuit court for a redetermination of the proper amount of attorneys' fees based on an apportionment, if practicable, between assumpsit and non-assumpsit claims; and (3) affirm the November 14, 2001 order and the December 26, 2001 judgment in all other respects.

Opinion of ACOBA, J., Dissenting in Part and Concurring in Part.

I respectfully disagree that the failure to meet the requirements of Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) should not result in vacation of circuit court orders granting motions for summary judgment but concur that when the circuit court fails to provide reasons for its award of attorney's fees, the appropriate course is to remand the issue for clarification by the court.

### I.

We have long held on questions of summary judgment that we stand in the shoes of the circuit court and, consequently, apply the same standards as the circuit court. See, e.g., Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) ("We review an award of summary judgment under the same standard applied by the circuit court."). Thus we review the record de novo. See State Farm Mut. Auto. Ins. Co. v. Gepaya, 103 Hawai'i 142, 145, 80 P.3d 321, 324 (2003) (citing Hawaii Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)) ("We review the circuit court's grant or denial of summary judgment de novo."). Because we review the record de novo, none of the circuit court's

court erred in its award of costs. Hawaii Cmty. Fed. Credit Union, 94 Hawai'i at 226 n. 10, 11 P.3d at 14 n. 10; HRAP Rule 28(b)(7).

**11.** We note that Price's assertion that "the circuit court awarded [AIG] *100%* of its claims for attorneys' fees," is plainly incorrect inasmuch as AIG sought $21,386.00 in fees, and the circuit court awarded AIG only $20,000.00 in fees.

findings or conclusions are binding on us. *See Chun v. Bd. of Trustees of Employees' Ret. Sys.*, 92 Hawai'i 432, 438, 992 P.2d 127, 133 (2000) ("Under [the *de novo*] standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it.").

Consequently, our *de novo* review on appeal from a summary judgment order is unlike that of appellate review in *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 948 P.2d 1055 (1997),[1] or *Okuhara v. Broida*, 51 Haw. 253, 456 P.2d 228 (1969),[2] referred to by the majority. *See* majority opinion at 110–111, 111 P.3d at 5–6. *See Beamer v. Nishiki*, 66 Haw. 572, 576, 670 P.2d 1264, 1270 (1983) ("*Unlike other appellate matters*, in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." (Emphasis added.)). In conducting *de novo* review, we evaluate a motion for summary judgment anew. *See State v. Hoshijo ex rel. White*, 102 Hawai'i 307, 315, 76 P.3d 550, 558 (2003) (defining *de novo* as "anew, afresh, a second time" and describing *de novo* review "as if the reviewing court is the front-line judicial authority and therefore, accords no deference to the lower courts' determinations" (citations and brackets omitted)). Hence, the concept of plain error[3] stemming from a party's failure to comply with HRCP Rule 56(e), *see* majority opinion at 111–112, 111 P.3d at 6–7, in the circuit court has little, if any, relevance to our review on appeal.

Although the majority cites 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 2738 (3d ed.2004) [hereinafter *Wright & Miller*] for the proposition that the "majority" of federal courts believe a party who fails to object to inadmissible matter waives the right to object on appeal, that treatise indicates only that "in the absence of 'a gross miscarriage of justice,' the court *may consider the defective affidavit.*" (Emphasis added.) Hence, *Wright & Miller* acknowledges that the lack of an objection does not automatically mean that the defective material must be credited or given effect. As *Wright & Miller* states, even where no "gross miscarriage of justice" would result, summary judgment may still be denied by the trial court because of the inadequacy of the supporting materials. *See CMS Indus., Inc. v. L.P.S. Int'l Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981) (stating "whatever may have been the sufficiency of [appellee's] objections, the district court may *on its own motion* and without abuse of discretion, properly refuse to credit an affidavit clearly defective on its face" (emphasis added)).

At the very least, then, the trial courts retain discretion to reject inadmissible evidence even if such evidence was not contested. *See Klingman v. Nat'l Indem. Co.*, 317 F.2d 850, 854 (7th Cir.1963) ("On a motion for summary judgment, if no objection is made to an affidavit which is objectionable under [Federal Rules of Civil Procedure (FRCP)] Rule 56(e), the affidavit may be considered by the court in ruling on the

---

1. In *Kawamata Farms*, 86 Hawai'i at 247–48, 948 P.2d at 1088–89, this court addressed, *inter alia*, whether the circuit court erred in imposing discovery sanctions by violating appellant's constitutional rights. Inasmuch as this issue was not raised on appeal via a summary judgment motion and this court was not applying *de novo* review, the *Kawamata* court's holding that the appellants waived said issue on appeal, by failing to raise it before the trial court, is inapplicable to the case at hand.

2. *Okuhara* concerned the wrongful admission of extrinsic evidence not objected to *at trial*. *See* 51 Haw. at 254–55, 456 P.2d at 229–30. Thus, this court was not applying *de novo* review of a summary judgment decision and, accordingly, like *Kawamata Farms, Okuhara* is distinguishable.

3. Hawai'i Rules of Appellate Procedure Rule 28(b)(4) (2005) states that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." This court has held that " 'an appellate court will only consider such questions as were raised and properly preserved in the lower courts. That rule applies ... unless this court is of the opinion that any of the alleged errors or alleged abuses patently appear on the record as a manifest error injuriously affecting substantial rights of the appellants.' " *In re Matsuoka*, 45 Haw. 83, 88, 363 P.2d 964, 967 (1961)(quoting *In re Ward*, 39 Haw. 39, 46 (1951)).

motion." (Emphasis added.)); *Mitchell v. Dooley Bros., Inc.*, 286 F.2d 40, 42 (1st Cir. 1960) (stating that "we do not believe it would have been error ... for the [trial] court to have refused to consider letters" that were unauthenticated hearsay, "[b]ut [the trial court] having done so without apparent objection below, we will not concern ourselves with any possible impropriety"); *Becker v. Koza*, 53 F.R.D. 416, 419 (D.Neb. 1971) ("At most the failure to object to an affidavit which is objectionable under Rule 56(e) *permits* the court to *consider the affidavit*." (Emphases added.)).

In view of our *de novo* review, *we* also should retain such discretion to reject inadmissible evidence without resort to plain error analysis. As this court has said, "[i]t is a well-established principle that on a motion for summary judgment, the record must be adequate for decision of the legal issues presented. Otherwise summary judgment must be reversed and, *in the discretion of the appellate court*, remanded for additional proceedings." *Mizoguchi v. State Farm Mut. Auto. Ins. Co.*, 66 Haw. 373, 381–82, 663 P.2d 1071, 1076 (1983) (citations omitted) (emphasis added); *see id.* at 382, 663 P.2d at 1076–77 (remanding for "additional evidence of work loss to support the judgment below" because the "only factual reference to decedent's work loss [was] ... not supported by any affidavit as required under HRCP Rule 56(e)").

Based upon an independent examination of the record, this court has reversed orders granting summary judgment because of HRCP Rule 56 violations. *See In re Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 12, 868 P.2d 419, 430 (1994) (holding that summary judgment was "improper" where it was based on computations derived from schedules that were "plainly hearsay" (affidavit attached to schedules failed to comply with HRCP Rule 56(e) by not stating that the affiant had

personal knowledge of the contents of the schedules)); *Pac. Concrete Fed. Credit Union v. Kauanoe*, 62 Haw. 334, 336–37, 614 P.2d 936, 938 (1980) (holding that the requirements of HRCP Rule 56(e) "are mandatory" and that "[b]ecause [a] ledger had not been attached to the affidavit [that relied upon the ledger], any information therefrom was inadmissible and should not have been considered by the circuit court"); *Cane City Builders, Inc. v. City Bank of Honolulu*, 50 Haw. 472, 474, 443 P.2d 145, 147 (1968) (concluding that a release that did not fulfill the requirements of HRCP Rule 56(e) "was not properly before the court on the motion for summary judgment and[, therefore,] the trial judge erred in considering the release in granting the motion"). Hence, in our decisions we have taken a more solicitous role in insuring that adequate and sufficient evidence support summary judgments as opposed to a rigid rule that has been characterized as applying in the so called "majority" of federal courts. With all due respect, I think it is a mistake to ignore the experience of our own jurisdiction in the administration of HRCP Rule 56.

Consequently, this court should retain discretion to *sua sponte* vacate orders granting motions for summary judgment where HRCP Rule 56(e) has not been satisfied. By doing so, we properly administer HRCP Rule 56(e) in consonance with our role of examining summary judgment motions "anew." To the extent that we do, we safeguard the process by which cases can be justifiably disposed of without a trial. HRCP Rule 56(e) requirements are not mere technicalities. They are necessary prerequisites that substantiate the replacement of one's "day in court" with a summary disposition of the case. In my view, the value in maintaining the integrity of that process outweighs any purported efficiency,[4] *see* majority opinion at

---

4. For example, in this case, Plaintiff's counsel at trial was different from counsel on appeal, so no advantage could be garnered from trial counsel's failure to properly follow Rule 56 requirements at trial for the purpose of reserving them for appeal. Additionally, although the majority refers to sandbagging, no evidence of that exists in the record. *See* majority opinion at 111–112, 111 P.3d at 6–7 (quoting *In re Teltronics Servs.,*

*Inc.*, 762 F.2d 185, 192 (2d Cir.1985)). Indeed, none of our cases even hint that the contrivance posited by the second circuit court of appeals, *i.e.*, that "[p]arties may ... selectively oppos[e] the points they choose, and on appeal claim[ ] that the unopposed points were defectively presented and required no response," *In re Teltronics Servs., Inc.*, 762 F.2d at 192, has any semblance to the real world of summary judgment

110, 111 P.3d at 5 (quoting *Kawamata Farms*, 86 Hawai'i at 248, 948 P.2d at 1089), obtained as a result of ignoring clear violations of Rule 56(e).

The rule adopted by the majority may in fact work injustice in cases where material facts will be established by virtue of a waiver. As alluded to earlier, the plain error rule affords no consolation in this regard because its application subjects a case to another layer of decision-making and considerations other than admissibility of evidence, increasing the risk that the injustice may not be corrected because of a disagreement in this court regarding the applicability or scope of the plain error doctrine itself.

The ICA followed long established precedent. *See, e.g.*, *GE Capital Hawaii, Inc. v. Yonenaka*, 96 Hawai'i 32, 42, 25 P.3d 807, 817 (App.2001) (relying on *In re Hawaiian Flour Mills*, 76 Hawai'i 1, 11, 868 P.2d 419, 429 (1994) for the proposition that inadmissible hearsay statements may not be relied on in summary judgment, and on *Nakato v. Macharg*, 89 Hawai'i 79, 89, 969 P.2d 824, 834 (App.1998), for the proposition that "an affidavit consisting of inadmissible hearsay cannot serve as a basis for ... summary judgment"). In light of the reasons stated above, there is no sound basis for affirming the order granting summary judgment, especially in the face of AIG's own admission that it did not comply with HRCP Rule 56.[5]

## II.

As to its second holding, the majority agrees that the question of "apportionment between assumpsit and non-assumpsit claims was clearly before the circuit court[,]" majority opinion at 112, 111 P.3d at 7, the amount awarded of $20,000 in attorney's fees was a "substantial portion" of the $21,386.00 requested, *id.* at 112, 111 P.3d at 7, and that the circuit court did not provide any "explanation" for its award, *id.* at 112, 111 P.3d at 7. When a trial court has failed to provide reasons for an award of attorney's fees, ap-

pellate courts in this jurisdiction have followed the practice of remanding the case to the court to provide such reasons, a course fair to the parties and corroborative of the trial court's assigned role in such matters. *See, e.g.*, *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 445, 32 P.3d 52, 89 (2001) (directing court on remand to determine "whether successful and unsuccessful claims involved a common core of facts or were based on related legal theories" in arriving at reasonable attorney's fees (internal quotation marks, citations and brackets omitted)); *Fujimoto v. Au*, 95 Hawai'i 116, 168–69, 19 P.3d 699, 751–52 (2001) (requiring circuit court, on remand, to reassess its award of attorneys' fees and costs in light of the lack of explanation given by the circuit court as to why said fees and costs were awarded); *First Hawaiian Bank v. Timothy*, 96 Hawai'i 348, 365, 31 P.3d 205, 222 (App. 2001) (remanding to the circuit court for redetermination of attorneys' fees due to difficulty of appellate court to "evaluate ... the propriety of the circuit court's award"); *Forbes v. Hawaii Culinary Corp.*, 85 Hawai'i 501, 503, 946 P.2d 609, 611 (App.1997) (remanding award of attorneys' fees for designation of statutory provisions under which award was made and for rendering of findings of fact and conclusions of law in support of such decision). There is no reason to depart from this salutary rule.

Upon consideration of plaintiffs-appellants' motion for reconsideration, filed March 30, 2005, the papers in support thereof, and the record herein,

IT IS HEREBY ORDERED that the motion is denied.

ACOBA, J., Dissenting.

Having dissented in part, I would grant reconsideration.

---

proceedings. Additionally, such a rule will have an untoward effect on the pro se party who many times is at a disadvantage in discerning the intricacies of a summary judgment motion.

5. In its answering brief, AIG declares it "will not dispute for purposes of this appeal Plaintiffs'

contention that its deposition exhibits lacked proper authentication." AIG further states in its footnote no. 5 that "its deposition exhibits failed to meet the requirements of Haw. R. Civ. P. 56(e)."